513 F.2d 840
 88 L.R.R.M. (BNA) 3562, 76 Lab.Cas. P 10,783
 Glynn ROSS and Nancy Ross, husband and wife, Plaintiffs-Appellants,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, a labor
organization organized under the laws of the
United States of America, et al.,
Defendants-Appellees.
 No. 73-1168.
 United States Court of Appeals,
Ninth Circuit.
 March 27, 1975.
 
 R. Kelly Hocker (argued), Tempe, Ariz., for plaintiffs-appellants.
 Mark I. Harrison (argued), Phoenix, Ariz., for defendants-appellees.
 OPINION
 Before HAMLEY, MERRILL and WRIGHT, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 This case involves grievances alleged by appellant[1] to have been suffered by him in connection with a local union election. The question presented on this appeal is whether Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 481 et seq., and specifically § 402 of Title IV, 29 U.S.C. § 482, provides the exclusive method of protecting the rights asserted by appellant and thus deprives the district court of jurisdiction. Such was the view of the district court in dismissing appellant's action.
 
 
 2
 In 1972 appellant was the incumbent financial secretary and business manager of Local 640 of the International Brotherhood of Electrical Workers and sought re-election to that position. He was opposed in the election by the president of the Local, who prior to the election, charged him with certain improprieties concerning union funds and filed those charges with appellee Duke, vice-president of the International, for hearing pursuant to the International's constitution. Appellant alleged that Duke deliberately delayed a trial on these charges until the three-week voting period for the election had begun in order to affect adversely appellant's chances for election. Appellant nevertheless received the greatest number of votes, but since he fell short of a majority a run-off became necessary. Appellant alleged that although prior to the run-off election Duke received recommendations favorable to appellant from the hearing officer who was entertaining the charges of misconduct, Duke deliberately failed to act on these recommendations until after the run-off. Appellant won the run-off by eight votes and was certified as winner by the local election board. His opponent protested certain ballots, however, and after an investigation Duke ordered a new election. Appellant then filed an appeal from this order with the International seeking a hearing on the decision to hold a new election and a stay of the new election pending that hearing or other disposition of the appeal. The International issued no such stay, and Duke scheduled the new election for a time by which it allegedly was improbable that a hearing could be held on appellant's internal appeal.
 
 
 3
 At that point appellant brought this suit. In counts I, II and III of his complaint he sought to enjoin the holding of the new election and interference with the election process by Duke and the International. He also sought a declaration that International had no authority to interfere with the Local and its holding of its election, and further sought an injunction prohibiting Duke from asserting further authority respecting the charges pending against appellant. The holding of the new election was not stayed, however, and appellant emerged as the winner. Counts I, II and III thus were rendered moot in so far as concerns the election at issue. No error is assigned as to their dismissal.
 
 
 4
 Count IV is the subject of this appeal. It is a count in tort with jurisdiction founded on diversity of citizenship. It seeks monetary damages and alleges that Duke, exceeding his authority as International vice-president, "has arbitrarily, recklessly and with malice and intent to injure plaintiff, acted to deprive plaintiff of his office of Business Manager and Financial Secretary, thereby interfering with all advantageous financial relationships between plaintiff and the Local." Further appellant alleges that Duke, "while acting under the guise and color of his office * * * has embarked upon a series of acts calculated to discredit, dishonor and disgrace plaintiff in his candidacy * * *."[2]
 
 
 5
 Title IV of the LMRDA is discussed in Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964), as follows:
 
 
 6
 "Title IV sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix 'reasonable qualifications uniformly imposed' for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate. Section 402 of Title IV, as has been pointed out, sets up an exclusive method for protecting Title IV rights, by permitting an individual member to file a complaint with the Secretary of Labor challenging the validity of any election because of violations of Title IV. Upon complaint the Secretary investigates and if he finds probable cause to believe that Title IV has been violated, he may file suit in the appropriate district court. It is apparent that Congress decided to utilize the special knowledge and discretion of the Secretary of Labor in order best to serve the public interest. Cf. San Diego Building Trades Council (Millmen's Union, Local 2020) v. Garmon, 359 U.S. 236, 242 (79 S.Ct. 773, 778, 3 L.Ed.2d 775, 781). In so doing Congress, with one exception not here relevant, decided not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV. Reliance on the discretion of the Secretary is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts."
 
 
 7
 (footnote omitted). See also Trbovich v. United Mine Workers, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972).
 
 
 8
 On this appeal Duke, supporting dismissal by the district court, contends that the "sum total" of appellant's complaint is to attack election-related conduct and that his attempt "to categorize Count IV as an intentional tort or a common law claim cannot be used as a means of circumventing the clear provisions of Title IV."
 
 
 9
 We cannot agree. Title IV and count IV involve different considerations, different harms and different remedies. The facts of this case serve to make this particularly clear. Appellant now has won his election. He does not, in count IV, challenge it or seek any relief which would interfere with operation of the Local pursuant to the election. Appellees make no claim that the Secretary can now compensate Ross for the harm he claims to have suffered not by violation of rights bestowed by Title IV but by tortious conduct at the hands of Duke. Further, the considerations apparently prompting Congress to choose the remedy it chose in § 402 preventing the blocking or delaying of elections by actions brought by individual members have nothing to do with, and are not frustrated by, the recovery of monetary damages for election-related torts. We perceive no public purpose to be served by prohibiting all civil actions to that end where challenge to the election is not involved and is not the result.
 
 
 10
 We conclude that Title IV of the LMRDA and § 402 do not deprive the district court of jurisdiction to entertain this tort claim.[3]
 
 
 11
 Duke also contends that appellant has not properly brought himself within the scope of diversity jurisdiction. This is founded on Duke's contention that the local union is an indispensable party and that joinder of the Local would destroy diversity.
 
 
 12
 We cannot agree that the Local is an indispensable party. Only Duke is alleged to have engaged in tortious conduct and relief is sought only from him. The Local would not in any way be affected by judgment.
 
 
 13
 Duke further contends that the International was a named defendant and that members of the International were residents of the same state as appellant and that this destroys diversity jurisdiction.
 
 
 14
 The International may well have been a necessary party as to counts I, II and III. As to count IV, however, no claim is asserted against the International. That count involves only a dispute between appellant and Duke. As to this dispute diversity does exist.
 
 
 15
 "But diversity and other jurisdictional principles may be combined so that diversity may support jurisdiction over a claim against certain parties and other jurisdictional principles support a claim against other parties."
 
 
 16
 1 J. Moore Federal Practice P 0.60, at n. 39 (2d ed. 1974), citing Romero v. International Terminal Operating Co., 358 U.S. 354, 380-81, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).
 
 
 17
 We see nothing in Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), inconsistent with these rulings.
 
 
 18
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 Joined with appellant Glynn Ross is his wife. Joined with appellee Raymond Duke is his wife. The joinders apparently are for reasons relating to the law of community property. Throughout, our reference in the singular in each case is to the husband
 
 
 [2]
 The complaint specifies "among other things" the following acts:
 "A. Procuring spurious charges to be brought against plaintiff;
 B. By refusing to afford plaintiff an early hearing upon the said charges, thereby leaving hang over plaintiff's head unresolved charges and innuendo during his campaign for Business Manager and Financial Secretary;
 C. By summarily, without authority, jurisdiction or basis, ordering another election after plaintiff was certified as winner;
 D. By refusing to render a decision upon the charges filed against plaintiff although having a reasonable opportunity to do so, thereby continuing to leave hang over his head unresolved charges of which plaintiff is innocent."
 
 
 [3]
 Since the parties to this appeal have focused solely on the preemptive effect of § 402 and Calhoon, and since appellees have filed no responsive pleading below, it would be appropriate to present to the district court in the first instance questions of the possible relevance of the standards set forth in Linn v. Plant Guard Workers Local 114, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), and followed in Old Dominion Branch No. 496, Letter Carriers v. Austin, 418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)