634 F.2d 453
 106 L.R.R.M. (BNA) 2416, 90 Lab.Cas. P 12,489
 Glynn ROSS and Nancy Ross, husband and wife, Plaintiff-Appellant,
v.
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, a Labor
Organization Organized Under the Laws of the United States
of America; Raymond Duke, International Vice-President, and
Thelma Duke, Defendants-Appellees.
 No. 77-3914.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1980.
Decided Dec. 22, 1980.
 
 1
 R. Kelly Hocker, Tempe, Ariz., for plaintiff-appellant.
 
 
 2
 Mark I. Harrison, Phoenix, Ariz., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the District of Arizona.
 
 
 4
 Before CHAMBERS and CHOY, Circuit Judges, and ZIRPOLI,* District Judge.
 
 
 5
 ZIRPOLI, Senior District Judge.
 
 
 6
 The factual background of this lawsuit is set forth in this court's opinion in Ross v. International Brotherhood of Electrical Workers, 513 F.2d 840 (9th Cir. 1975). It may briefly be restated here.
 
 
 7
 In 1972, appellant Glynn Ross was running for reelection to his post as financial secretary and business manager of Local 640 of the International Brotherhood of Electrical Workers ("IBEW"). He was opposed in the election by Mike Beck, the president of the local, who prior to the election charged him with certain improprieties concerning union funds and filed those charges with appellee Raymond Duke, vice-president of the IBEW, for hearing pursuant to the International's constitution. Duke hired an accounting firm to audit union financial records; the firm's report contained findings critical of Ross' use of the funds. Ross claims that the findings are untrue.
 
 
 8
 Ross alleged that Duke deliberately delayed hearing on the charges until the period for voting, in order to impair Ross' chances in the election. The election was held and Ross received more votes than any other candidate, though not a majority. A run-off election was necessary.
 
 
 9
 Ross further claimed that the officer who heard Beck's charges made recommendations favorable to Ross prior to the run-off election, but that Duke deliberately delayed taking action on the recommendations. Ross won the run-off election; Beck protested certain ballots. Duke ordered an investigation, upheld the protest (allegedly without a hearing for Ross), and on July 12, 1972, decreed a new election and ordered that Ross not be installed. Ross appealed the decree to the IBEW and at the same time unsuccessfully sought a stay of the new election, which he won. Before he did, he filed three lawsuits, including this one.[1]
 
 Prior Litigation
 
 10
 The first of the three lawsuits was filed on July 17, 1972, in Arizona superior court ("the July action"), against Duke, the IBEW, Local 640, Beck, and unnamed Doe defendants. Ross alleged, inter alia, that in decreeing the new election and in ordering that Ross not be installed as financial secretary and business manager, Duke and the IBEW had unlawfully obstructed his rights to the office. The complaint sought only injunctive relief. On August 31, 1972, the superior court issued an "Amended Judgment" stating:
 
 
 11
 The court finds that the subject matter of plaintiff's complaint and the relief sought thereby fall within a field which has been preempted by Congress under Title 4 of the Labor Management Reporting and Disclosure Act.
 
 
 12
 Accordingly, the court finds that it has no jurisdiction over the subject matter of plaintiff's complaint.
 
 
 13
 Accordingly, it is ordered denying plaintiff's prayer for injunctive relief. (sic).
 
 
 14
 RA at 111.
 
 
 15
 Ross did not appeal that decision.
 
 
 16
 The second action is the one at bar. Ross filed the complaint on August 7, 1972, against Duke and the IBEW. Counts I, II and III of the complaint sought injunctive and declaratory relief; jurisdiction was based on provisions of the Labor Management Reporting and Disclosure Act ("LMRDA"). Count IV was a claim for damages against Duke alone. Ross therein alleged that Duke, "with malice and intent to injure" Ross, interfered with the latter's "advantageous financial relationships" with Local 640.[2] Jurisdiction was based on diversity of citizenship between Ross and Duke.
 
 
 17
 The district court dismissed the action on September 25, 1972, finding that plaintiff had failed to exhaust remedies available under the LMRDA and that therefore the court lacked subject matter jurisdiction. Ross appealed the dismissal as to Count IV only. We reversed, rejecting Duke's argument that election-related state tort actions for damages were preempted by the LMRDA,[3] and noting that Count IV was properly based on diversity jurisdiction because it "involved only a dispute between (Ross) and Duke" and sought nothing from the IBEW, a non-diverse defendant, Ross v. International Brotherhood of Electrical Workers, supra, 513 F.2d at 843.[4]
 
 
 18
 On remand, defendants again moved to dismiss the complaint and action, this time on the ground of res judicata. On September 7, 1977, the district court granted the motion and dismissed the action, holding that "the issues attempted to be presented here should have been raised" in Ross' third lawsuit, discussed next. The instant appeal followed.
 
 
 19
 The third action was filed in Arizona superior court a few days after the filing of the complaint in the case at bar. It sought damages from Duke and the accounting firm on a defamation theory; Ross claimed injury to his reputation from the release of the allegedly untrue audit report. The trial judge granted judgment n. o. v. to defendants on August 1, 1974, holding, inter alia, that the report was a conditionally privileged publication subject to the requirements of proof of "actual malice" set forth in Linn v. United Plant Guards of America, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), and that Ross' proof did not suffice to meet that requirement. The Arizona Court of Appeals agreed and affirmed on January 25, 1977, Ross v. Gallant, Farrow & Co., 116 Ariz. 298, 569 P.2d 240 (1977).
 
 
 20
 Ross makes four arguments on appeal. First, he contends that the court below erred in concluding that the defamation suit and the claim raised in Count IV of the instant complaint were based on the same "cause of action." Second, he argues that even if both suits were within the scope of a single cause of action, res judicata should not have been invoked in this case because he had no prior opportunity to make his Count IV claim in a court of competent jurisdiction. Third, he argues that the court below should have held Duke "judicially estopped" from raising res judicata as a defense. Finally, he claims that Duke waived any res judicata defense by failing to move to abate the defamation action on the ground that Ross was splitting a single cause of action.
 
 
 21
 Before addressing these arguments, we turn to a question concerning subject matter jurisdiction not raised by the parties.
 
 
 22
 * Upon remand, the district court should have dismissed the IBEW and thereby perfected diversity jurisdiction, under Rule 21, Fed.R.Civ.P. Where a non-diverse defendant is not indispensable within the meaning of Rule 19(b), Fed.R.Civ.P., dismissal is appropriate, and may be accomplished on appeal by the court sua sponte. E. g., Fidelity & Cas. Co. v. Reserve Ins. Co., 596 F.2d 914, 918 (9th Cir. 1979); Anrig v. Ringsby United, 591 F.2d 485, 491 (9th Cir. 1978). See also Sams v. Beech Aircraft Corp., 625 F.2d 273, 278 (9th Cir. 1980). As we have noted, Ross seeks nothing from the IBEW in this case, nor is it contended that the IBEW would be prejudiced in any way by its absence from the action.[5]
 
 
 23
 Accordingly, the IBEW should be and is now dismissed as a party to this suit.
 
 II
 
 24
 The doctrine of res judicata operates to bar all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties (or their privies) on the same cause of action, if the prior suit concluded in a final judgment on the merits rendered by a court of competent jurisdiction.[6] Lawlor v. National Screen Service, 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122 (1955). In diversity cases, the preclusive effect of a prior state court judgment may be accorded no wider scope than that which the state itself would give to it, 28 U.S.C. section 1738, Porter v. Wilson, 419 F.2d 254 (9th Cir. 1969), cert. denied, 397 U.S. 1020, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970); Weekes v. Atlantic National Ins. Co., 370 F.2d 264, 268 (9th Cir. 1966), 1A Moore's Fed.Prac. P 0.311(2) at 3176-78 (2d ed. 1979); cf. Harris v. Jacobs, 9th Cir., 621 F.2d 341, 344 n.3.[7] Ross argues that the district court's application of res judicata was incorrect in two respects. He claims that the defamation suit and the "tortious interference" claim in the instant suit were based on different causes of action, and that even if the same cause of action was involved in both suits, the grounds for recovery in Count IV were not ones which "could have been asserted" in Arizona superior court.
 
 
 25
 Of the various tests commonly employed to determine whether a single "cause of action" is presented in two lawsuits, see Harris v. Jacobs, supra, 621 F.2d at 343, Arizona has chosen one which focuses on whether proof of the claims in the two cases depends upon the same evidentiary facts. Rousselle v. Jewett, 101 Ariz. 510, 421 P.2d 529, 532 (1966); Day v. Wiswall's Estate, 93 Ariz. 400, 381 P.2d 217 (1963); Wilson v. Bramblett, 91 Ariz. 284, 371 P.2d 1014, cert. denied, 371 U.S. 888, 83 S.Ct. 187, 9 L.Ed.2d 123 (1962); Pierpont v. Hydro Manufacturing Co., Inc., 22 Ariz.App. 252, 526 P.2d 776, 778 (1974); Windauer v. O'Connor, 13 Ariz.App. 442, 477 P.2d 561 (1970), vacated on other grounds, 107 Ariz. 267, 485 P.2d 1157 (1971). In the case at bar, there is an arguable overlap, but not an identity, between the facts alleged in support of the tortious interference claim and those essential to the defamation action. Duke's alleged interference with Ross' financial relationship with the Local rests on several factual bases, including Duke's ordering another election and refusing to decide the charges against Ross.[8] Count IV also alleges, however, that Duke interfered with Ross' candidacy by "(p)rocuring spurious charges" and that the acts complained of were "calculated to discredit, dishonor, and disgrace" Ross.
 
 
 26
 In view of these allegations, and of the fact that the determination of what comprises a single cause of action is not a precise or mechanical process, see Harris v. Jacobs, supra, 621 F.2d at 343, we do not rest our decision on a determination that the district court erred in applying the law of the state in which it sits, see Transport Indemn. Co. v. Liberty Mut. Ins. Co., 620 F.2d 1368, 1370 (9th Cir. 1980).
 
 
 27
 We therefore turn to the argument that the grounds for recovery set forth in Count IV could not have been raised in the defamation action. Ross contends that if he had brought the tortious interference claim before the Arizona superior court in the defamation suit, he would have been met with an unavoidable ruling of collateral estoppel on the issue of the superior court's subject matter jurisdiction. The state court had ruled in the July action that "the subject matter of plaintiff's complaint and the relief sought thereby fall within a field which has been preempted by Congress under Title 4 of the Labor Management Reporting and Disclosure Act," RA at 111 (emphasis added). That decision was not appealed and became final prior to the filing of the defamation case. Both the July action complaint and Count IV of the complaint in the instant case are squarely founded upon the claim that Duke unlawfully interfered with Ross' rights to take office. Therefore, according to Ross, the court in the defamation action would have refused to hear his tortious interference claim on the ground that the issue of subject matter jurisdiction had been conclusively decided against him in the July action. Ross concludes that the court below erred in holding, in effect, that he had already had his chance to litigate the substance of Count IV as part of the defamation suit.
 
 
 28
 Duke responds that the Arizona court in the July action rested its finding of preemption, and therefore of its lack of jurisdiction, on the fact that Ross sought injunctive relief. Because Count IV seeks only damages, Duke reasons, it presents a different jurisdictional issue, and therefore could have been heard by the court in the defamation suit. Accordingly, Ross had the requisite prior opportunity to litigate his tortious interference claim.
 
 
 29
 We think both arguments miss the mark. The question is not whether the Arizona courts had jurisdiction over Ross' tortious interference claim, but whether Ross had a fair opportunity to litigate that claim before a competent court prior to bringing it to the court below. The decision of the July action court regarding its jurisdictional competence is, at best, ambiguous as to whether the complaint's request for injunctive relief was the decisive factor: "(t)he court finds that the subject matter of plaintiff's complaint and the relief sought thereby fall within a field which has been preempted by Congress under Title 4 of the Labor Management Reporting and Disclosure Act," RA at 111 (emphasis added). Given the language of the ruling, this court cannot know, and more importantly, Ross cannot be deemed to have known in 1972, whether the defamation action court would have anticipated this court's ruling in 1975 that Title IV does not preempt "the recovery of money damages for election-related torts," Ross v. International Brotherhood of Electrical Workers, supra, 513 F.2d at 843, and would have permitted Ross to join his tortious interference claim in the defamation suit. Presented with the decision of the July action court, one in Ross' position would have been amply justified in believing that to bring the tortious interference claim before the Arizona lower court would be futile.
 
 
 30
 Arizona courts and this court have held that res judicata should not be applied "so rigidly as to defeat the ends of justice," Weekes v. Atlantic National Ins. Co., 370 F.2d 264, 272 (9th Cir. 1966), quoting Smith v. Pinner, 68 Ariz. 115, 121, 201 P.2d 741, 745 (1948). In the circumstances of this case, it cannot be said that Ross has had a fair, reasonable opportunity to have his tortious interference claim entertained by a court of competent jurisdiction. Rather, "(o)nly a hypertechnical application of a judicially created doctrine would deny (Ross his) day in court," Moitie v. Federated Dept. Stores, Inc., 611 F.2d 1267, 1270 (9th Cir. 1980).
 
 
 31
 Our conclusion makes it unnecessary to address the other arguments raised by appellant.
 
 
 32
 REVERSED and REMANDED for proceedings on the merits not inconsistent with this opinion.
 
 
 
 *
 The Honorable Alfonso J. Zirpoli, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Ross also filed a fourth suit, in the district court which is not relevant to the issues raised here. See Ross v. International Brotherhood of Electrical Workers, 544 F.2d 1022 (9th Cir. 1976)
 
 
 [2]
 Count IV also alleged as follows:
 That the defendant, R.G. Duke, has, while acting under the guise and color of his office as (IBEW's vice president), has (sic) embarked upon a series of acts calculated to discredit, dishonor and disgrace plaintiff in his candidacy by, among other things
 A. Procuring spurious charges to be brought against plaintiff;
 B. By refusing to afford plaintiff an early hearing upon the said charges, thereby leaving hang (sic) over plaintiff's head unresolved charges and innuendo during his campaign for Business Manager and Financial Secretary;
 C. By summarily, without authority, jurisdiction or basis, ordering another election after plaintiff was certified as winner;
 D. By refusing to render a decision upon the charges filed against plaintiff although having a reasonable opportunity to do so, thereby continuing to leave hang over his head unresolved charges of which plaintiff is innocent.
 RA at 13, see Ross v. International Brotherhood of Electrical Workers, supra, 513 F.2d at 842 n.2. Next follows an allegation of damages caused by the enumerated acts in the amount of $100,000, and the prayer for relief.
 The arrangement of the paragraphs of Count IV makes it apparent that the acts set forth in subparagraphs A through D, supra, are the factual basis for the legal theory of interference with an advantageous financial relationship. The parties themselves refer to Count IV as the "tortious interference" claim, and we shall adopt the same terminology.
 
 
 [3]
 RA at 13. We found, moreover, that the district court's dismissal of Counts I, II and III was moot; Ross won the election he initially sought to enjoin. Ross v. International Brotherhood of Electrical Workers, supra, 513 F.2d at 841
 
 
 [4]
 Nevertheless, the IBEW remained a party defendant and is so named on this appeal. No motion was ever made to dismiss the IBEW, nor did the district court dismiss it sua sponte. In fact, following remand and before obtaining the dismissal appealed from, defendants moved to dismiss the action for lack of complete diversity, RA at 279. According to a minute entry on the docket sheet, the motion was denied on April 4, 1977
 
 
 [5]
 It was conceded at oral argument that the IBEW is not an indispensable party
 It is conceivable that the district court, following remand, believed that it had pendent jurisdiction over Count IV even after Counts I, II and III (the asserted federal claims) had been excised from the complaint, under the doctrine of United Mineworkers of American v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and therefore that diversity of citizenship was unnecessary to support jurisdiction. However, the district court initially determined that it lacked jurisdiction to hear the federal claims, and that conclusion was not disturbed on appeal. In those circumstances, absent diversity of parties' citizenship, the district court lacked power over the case and possessed no discretion to pass on the state claim raised on Count IV. See Neeld v. National Hockey League, 594 F.2d 1297, 1300-01 (9th Cir. 1979); State of Arizona v. Cook Paint and Varnish Co., 541 F.2d 226, 227-228 (9th Cir. 1976), cert. denied, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977). Thus, pendent jurisdiction does not provide an alternative to diversity of citizenship as a jurisdictional basis.
 
 
 [6]
 We use the term in its proper sense of claim preclusion, as distinct from the related doctrine of "collateral estoppel," or issue preclusion. See Johnson v. Mateer, 625 F.2d 240 at 243 n.5 (9th Cir. 1980). In his brief to this court, Ross discusses at some length the latter doctrine, though the district court's memorandum decision never mentions it. RA at 410-13. The two Arizona cases cited by the court, DiOrio v. City of Scottsdale, 2 Ariz.App. 329, 408 P.2d 849 (1965), and Weller v. Weller, 14 Ariz.App. 42, 480 P.2d 379 (1971), are on their facts applications of collateral estoppel rather than res judicata, but the district court's reasoning and language is that of the latter doctrine. Moreover, two other cases cited by the court below, Hatchitt v. United States, 158 F.2d 754 (9th Cir. 1946), and McCarthy v. Noren, 370 F.2d 845 (9th Cir. 1967), apply res judicata in the strict sense
 Collateral estoppel bars a party from relitigating an issue identical to one he has previously litigated to a determination on its merits in another action. Ross surmises that the court below may have thought that the issue of "actual malice" had to be proven against Duke before Ross could prevail on the claim raised in Count IV, and that the Arizona courts' finding on that issue collaterally estopped Ross from relitigating it. If "actual malice" were a necessary element of Ross' Count IV case, then the district court would have been correct in dismissing the action. Ross makes the unexceptionable observation that "actual malice" is a term of art expressing limits on defamation liability, and has little if anything to do with the elements necessary to prove tortious interference with an advantageous financial relationship, the theory of Count IV. Thus, the district court would have erred in barring Ross' action if it had used the fallacious reasoning Ross attributes to it. But it did not; the decision below is more reasonably read as one relying solely on res judicata. The court made no reference to "actual malice" on its memorandum of decision.
 
 
 [7]
 Neither the parties nor the court below appear to have taken an explicit position as to whether state or federal res judicata principles apply in this case
 
 
 [8]
 See note 2, supra