**SYUFY ENTERPRISES, Plaintiff,**

**v.**

**AMERICAN MULTICINEMA, INC., AMC Film Management Inc., and Durwood, Inc., Defendants.**

**No. C–81–2642 WHO.**

United States District Court, N.D. California.

July 20, 1983.

Michael N. Khourie, Eugene Crew, Mark J. LeHocky, Broad, Khourie & Schulz, San Francisco, Cal., for plaintiff.

Benjamin H. Parkinson, Ackerman, Johnston, Campbell & Parkinson, San Francisco, Cal., Robert C. Hackett, Mohr, Hackett, Pederson, Blakley & Randolph, Phoenix, Ariz., Alan K. Benjamin, Hoskins, King, McGannon, Hahn & Hurwitz, Kansas City, Mo., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

This suit ("*Syufy II*") for damages and injunctive relief under federal and state antitrust laws and state tort law is the successor to an earlier suit between the same parties, *Syufy Enterprises v. American Multi-Cinema, Inc.*, No. C–79–3052 WHO (N.D.Cal. filed Oct. 31, 1979) ("*Syufy I*"), in which a jury returned a verdict on defendants' counterclaims for a sum of $1,006,410 (before trebling) in damages. On defendants' motion and plaintiff's "counter-motion" for summary judgment, the Court must now determine whether the claims and counterclaims filed herein are precluded under the doctrine of *res judicata* by the judgment entered in the earlier case. For the reasons set forth below, the Court finds that they are so precluded and, with one qualification to be discussed below, dismisses this action.

### I

On October 31, 1979, plaintiff filed the complaint in *Syufy I* for damages and injunctive relief pursuant to the Sherman Act, 15 U.S.C. §§ 1, 2, the Clayton Act, 15 U.S.C. §§ 15, 22, 26, the California Business and Professions Code, §§ 16,600 *et seq.*, 16,720 *et seq.*, 17,000 *et seq.*, and state tort law. The gravamen of the complaint was that, commencing in April, 1973, defendants conspired with unspecified individuals or entities to restrain trade in the exhibition of first-run motion pictures in Santa Clara County and to monopolize the relevant market through conduct violative of Sections 1 and 2 of the Sherman Act and certain provisions and policies of state law. The complaint set forth at paragraph 11 eight specific actions and/or courses of conduct in which defendants allegedly engaged with the purpose and intent of destroying plaintiff's ability to compete for first-run films in Santa Clara County.

On November 26, 1979, defendants filed their counterclaim in *Syufy I* for damages and injunctive relief for violations of Sections 1 and 2 of the Sherman Act and Section 3 of the Clayton Act. Defendants alleged that plaintiff had at all relevant times possessed monopoly power in both the indoor and drive-in film exhibition markets in the San Jose zone of Santa Clara County, and that plaintiff used its monopoly power and conspired with various distributors and exhibitors to restrain trade and eliminate competitors. The counterclaim set forth at paragraph 11 four specific courses of conduct adopted by plaintiff that allegedly violated federal antitrust laws.

During the early months of 1981, the parties completed a "whirlwind" discovery scheduled in anticipation of the March 3, 1981, discovery cutoff date set forth in the Court's first pretrial order. During this time, defendants sought, to no avail, to determine the identity of any co-conspirators with whom they were alleged to have conspired and the nature of any unlawful conspiratorial activity alleged in the complaint.[1] Plaintiff did not respond to defendants' inquiry with sufficient specificity until April 6, 1981, five weeks after the discovery cutoff date, at which time plaintiff disclosed a number of alleged unlawful acts by the defendant that had not been mentioned previously in the complaint or in any other discovery documents. These acts included: (1) paying large, unallocated advances of film rental to distributors (pur-

---

1. *See* defendants' nonuniform interrogatories (second set), interrogatory 69 (filed January 27, 1981).

portedly in return for favorable treatment); (2) negotiating "circuit deals" on certain motion pictures and cross-collateralizing guarantees on certain other pictures; (3) dropping scheduled performances of films at a particular location in order to accommodate unauthorized performances of other films at that location; and (4) negotiating favorable downward adjustments in the terms under which films had been rented in existing leases.[2]

On April 10, 1981, the Court held a pretrial conference during which it determined that plaintiff had failed to comply with the provisions of the Court's pretrial order governing the conduct of discovery. The Court found that plaintiff had failed to respond adequately to numerous interrogatories and requests for documents, and most important, had failed to provide until after the close of discovery specific information underlying plaintiff's claim of conspiracy under Section 1 of the Sherman Act. Consequently, pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure, the Court limited the evidence to be introduced at trial in support of plaintiff's conspiracy claim to the facts that had been provided in discovery responses before the discovery cutoff date.[3]

On April 24, 1981, plaintiff moved for leave to amend its complaint to identify six major motion picture distributors as co-conspirators of defendants, and to add to the list of specific antitrust violations contained in paragraph 11 of the complaint the additional illegal acts set forth in its interrogatory answers of April 6. After another hearing held on May 29, 1981, the Court denied plaintiff's motion for leave to amend on the grounds that plaintiff's delay in seeking to amend the complaint was inexcusable, as plaintiff possessed the relevant facts underlying the proposed amendment prior to the discovery cutoff date. More-over, the proposed amendments threatened to broaden significantly the scope of the lawsuit, necessitating additional discovery, imposing unjustifiable hardship on the defendants, and coming dangerously close to "trial by ambush." [4]

On June 23, 1981, plaintiff initiated the instant lawsuit, *Syufy II*, with a complaint substantially similar to the complaint filed in *Syufy I*. The *Syufy II* complaint identifies the six co-conspirators/distributors and the four specific courses of illegal activity that plaintiff sought to introduce in *Syufy I* by way of amendment and discovery. The *Syufy II* complaint also encompasses a larger period of time, commencing December 12, 1972, and continuing "through the present," *e.g.*, June 23, 1981. In all other respects, the *Syufy II* and *Syufy I* complaints are identical.

On August 11, 1981, defendants filed their counterclaim in *Syufy II*, which in all material respects is identical to the counterclaim filed in *Syufy I*. The *Syufy II* counterclaim encompasses a broader period of time, however, by virtue of the allegations of illegal activity continuing "through the date of filing of this counterclaim."

On September 18, 1981, the Court, noting that the second lawsuit, *Syufy II*, appeared to be an attempt by the plaintiff to circumvent the Court's prior rulings in *Syufy I*, denied plaintiff's motion to consolidate the two actions for trial, and granted defendants' motion to stay all discovery in *Syufy II* pending entry of judgment in *Syufy I*.

Finally, on November 20, 1981, the Court granted defendants' motion for partial summary judgment in *Syufy I* on any damage claim arising out of the licensing and exhibition of films that were bid subsequent to the date on which plaintiff filed *Syufy I*, *e.g.*, October 31, 1979. Similarly,

---

**2.** *See* plaintiff's answers to interrogatories, response to interrogatory 69 (filed April 6, 1981).

**3.** Reporter's transcript, p. 6, line 20—p. 7, line 6 (hearing of April 10, 1981). The Court subsequently determined that the defendants constituted a single corporate entity and dismissed plaintiff's Section 1 (conspiracy) claim for fail-ure to identify parties other than the named defendants with whom they conspired to restrain trade. *See* Reporter's Transcript (hearing of November 6, 1981).

**4.** Reporter's Transcript, p. 9, lines 11–15 and p. 11, lines 3–7 (hearing of May 29, 1981).

following the third day of trial in *Syufy I*, on December 3, 1981, the Court forbade defendants to introduce any evidence on its counterclaim of injury occurring after October 31, 1979.[5]

## II

Each of the parties contends that its opponent's claims herein are barred under the rule of *res judicata* by the judgment entered in *Syufy I*. Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981). The Supreme Court has described the doctrine and the policies it promotes as follows:

> "The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment."

*Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (citation omitted). The Ninth Circuit has articulated four requisites to the application of the rule of *res judicata;* there must be: (1) a valid final judgment, (2) rendered on the merits, and (3) a subsequent action involving the same parties or those in privity with them, (4) that is based on the same cause of action or claim. *Munoz v. City of Imperial*, 604 F.2d 1174, 1177 (9th Cir. 1979). The Court finds that these requisites are met in the instant suit and in *Syufy I* with respect to both the claims and counterclaims.

This suit and *Syufy I* clearly involve the same cause of action or claim. There are several criteria for determining whether the same cause of action is involved in two suits, among them: (1) whether substantially the same evidence is presented in the two actions; (2) whether the two suits involve infringement of the same right; and (3) whether the two suits arise out of the same transactional nucleus of facts. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980). The crucial element underlying all of the criteria is the same factual predicate of the several claims asserted. *Id.* There can be little doubt that *Syufy I* and *Syufy II* concern the same cause of action under these criteria. The complaints in *Syufy I* and *Syufy II* set forth the same allegations of unlawful activity and cover substantially the same period of time. The effect of such unlawful activity, the injury to plaintiff, and the relief sought, all are the same in *Syufy II* as in *Syufy I*. Thus, it appears that the two suits arose from the same "transactional nucleus" and that they involve an infringement of the same right. Moreover, as the *Syufy II* complaint is presently framed, plaintiff would be entitled to discover the same facts and present the same proof at trial in this case as it discovered and presented in *Syufy I*.

The procedural history of these two suits further bolsters the Court's determination that *Syufy I* and *Syufy II* concern the same cause of action. Plaintiff initially sought to introduce evidence of the instant claims in *Syufy I*, in support of the general allegations of unlawful activity alleged therein. Only after plaintiff was precluded, due to its dilatory tactics, from asserting these claims in *Syufy I* did it designate them to be an independent cause of action in this suit.

---

**5.** Reporter's Transcript, p. 741, line 10—p. 744, line 20 (December 3, 1981).

█ The Court also finds, notwithstanding plaintiff's argument to the contrary, that the claims asserted herein were concluded on their merits in *Syufy I.* The Court in effect dismissed these claims from that suit pursuant to its powers under Rule 37(b)(2) after plaintiff failed to comply with the Court's pretrial order with respect to discovery. A number of courts have held, and this Court so holds, that a dismissal under Rule 37 operates as an adjudication on the merits. *Papilsky v. Berndt,* 466 F.2d 251, 254 (2d Cir.1972); *Stebbins v. State Farm Mutual Automobile Insurance Co.,* 413 F.2d 1100, 1102 (D.C.Cir. 1969); *Nasser v. Isthmian Lines,* 331 F.2d 124, 129 (2d Cir.1964); *Carter v. McGowan,* 524 F.Supp. 1119, 1121 (D.Nev.1981).

Furthermore, the claims asserted here could have been adjudicated on the merits in *Syufy I,* as elements of the causes of action alleged therein, but for plaintiff's failure to raise them in a timely fashion. Plaintiff is precluded from asserting in this suit claims that could have been raised in an earlier action decided on the merits. *See Federated Department Stores, supra,* 452 U.S. at 398, 101 S.Ct. at 2427; *Ross v. International Brotherhood of Electrical Workers,* 634 F.2d 453, 457 (9th Cir.1980). *Syufy I* clearly was decided on its merits.

Plaintiff does not dispute the fact that *Syufy I* ended in a valid final judgment; nor does it dispute the fact that *Syufy I* and *Syufy II* concern the same parties. Consequently, all of the requisites for application of *res judicata* to the claims herein have been met.

█ Similarly, the counterclaim asserted herein is precluded by the judgment in *Syufy I.* A simple comparison of the counterclaims filed in the two suits indicates that they are nearly identical, but for the periods of time for which relief is sought. Defendants do not argue otherwise. Accordingly, *res judicata* bars relitigation of the instant counterclaim.

### III

█ Each of the parties raises the fact that its pleading technically asserts claims arising since the filing of *Syufy I* on October 31, 1979. This is so because the parties allege unlawful activity continuing up to, and beyond, the filing of the instant action. They further argue that they should not now be precluded from asserting their post-October 31, 1979, claims as they were prevented by Court order from doing so in *Syufy I.*

The Court is aware of the precedent that suggests that a new suit may be predicated on unlawful activity continuing after judgment in a prior suit concerning the same unlawful activity. *Lawler v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Exhibitors Poster Exchange, Inc. v. National Screen Service Corp.,* 421 F.2d 1313 (5th Cir.1970); 1B Moore's Federal Practice ¶ 0.410 at 1156, 1172 (2d ed. 1948 & Supp.1982). However, given the very general period of time covered by the instant pleadings, the ambiguity concerning when within this period the various unlawful acts alleged herein occurred, and the procedural history of this case and *Syufy I,* the Court cannot determine whether or not the instant complaint and counterclaim truly encompass claims arising after October 31, 1979. Accordingly, the Court finds that all such claims, if any, should be dismissed without prejudice for the parties' failure to plead them with sufficient particularity as required by Rule 8 of the Federal Rules of Civil Procedure.

IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED; the complaint is DISMISSED as to all claims arising prior to October 31, 1979, and DISMISSED WITHOUT PREJUDICE as to all claims arising thereafter.

2. Plaintiff's countermotion for summary judgment is GRANTED; the counterclaim is DISMISSED as to all claims arising prior to October 31, 1979, and DISMISSED WITHOUT PREJUDICE as to all claims arising thereafter.