Esther OLIPHANT, Plaintiff,

v.

Ronald RICHARDSON, et al.,
Defendants.

Civ. A. No. 86–1739.

United States District Court,
District of Columbia.

July 2, 1986.

Mozart G. Ratner, Ronald Rosenberg, Washington, D.C., Barbara Hillman, Cornfield & Feldman, Chicago, Ill., for plaintiff.

Robert M. Weinberg, Jeffrey Freund, Michael H. Gottesman, Mady Gilson, Bredhoff & Kaiser, Washington, D.C., for defendants in official capacity.

Arthur Schiller, Washington, D.C., for defendants in individual capacity.

MEMORANDUM OPINION

BARRINGTON D. PARKER, Senior District Judge:

On June 22, 1986, plaintiff Esther Oliphant obtained an *ex parte* order from Judge Harold Greene, granting her leave to file a complaint under Title V of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or "Act"), 29 U.S.C. § 501 *et seq.* (1982). Her complaint alleges breaches of fiduciary duties by union officers in violation of section 501(a) of the LMRDA, 29 U.S.C. § 501(a). The named defendants are certain officers of Local 25, Hotel Employees and Restaurant Employees Union ("Local 25" or "Union"). Plaintiff Oliphant also sought an injunction restraining the defendants from installing the new Executive Board of the Union, recently elected in May 1986, until such time as the old Board, of which plaintiff is a member, could consider and act on plaintiff's allegations that fiduciary duties have been breached and her demand that the Union institute suit for appropriate relief.

Judge Greene stayed the installation of the newly elected officers pending a hearing on a show cause order issued at plaintiff's request. The show cause hearing took place on June 23, and, after considering the argument of counsel, the court ruled that the installation of the newly elected officers of Local 25 should proceed as scheduled that afternoon. A further hearing on the matter was scheduled for June 26, 1986, and counsel for the parties were requested to submit additional memoranda. The briefs and further argument of

proper remedy in this case, an order compelling the Secretary to file suit is unnecessary and

would be inappropriate.

the parties on June 26, 1986 have been fully considered and the Court determines that its decision was correct. The injunctive relief requested by plaintiff is not available and is inappropriate in a proceeding under Title V of the LMRDA. The plaintiff's request for an injunction, nullifying the installation of the officers and ordering the old Executive Board to vote on her complaint is denied.[1]

## DISCUSSION

Title V of the LMRDA gives an individual union member the right to sue officers or other representatives of the union for violations of their fiduciary duties. Prior to a member bringing such a suit in federal court, the union itself must refuse or fail to act against the officer. Leave to file suit must be granted by a district court "for good cause shown." 29 U.S.C. § 501(b). A prevailing plaintiff in such a suit may "recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." *Id.*

Plaintiff argues that an injunction preventing the installation of the newly elected officers of Local 25 is "other appropriate relief" in the special circumstances that this case presents. She contends that the injunction is necessary to permit the union the opportunity to decide whether to bring an action against the accused officers. The newly elected Executive Board, in her view, cannot fairly assess her allegations since it is dominated by the very officers who are accused of wrongdoing.

Defendants contend that a district court has no authority under Title V to issue an injunction interfering with the results of a union election. They rely heavily on another portion of the LMRDA, Title IV, which covers union election procedures.

A union member who believes that Title IV has been violated and exhausts union remedies without relief may file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). The Secretary must investigate that complaint and "if he finds probable cause to believe that a violation of [Title IV] has occurred ... he shall ... bring a civil action against the labor organization as an entity." 29 U.S.C. § 482(b). "The remedy provided by [Title IV] for challenging an election already conducted shall be exclusive." 29 U.S.C. § 483. Thus, the Secretary of Labor alone may bring suit to overturn an election that is alleged to violate Title IV. *Wirtz v. Local 153, Glass Bottle Blowers Association,* 389 U.S. 463, 473, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968); *Shelley v. Brock,* 793 F.2d 1369 (D.C.Cir.1986). The Act also provides that "the challenged election shall be presumed valid pending a final decision thereon ... and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." 29 U.S.C. § 482(a).

Violations of other provisions of the LMRDA sometimes influence union elections that are the primary concern of Title IV. In *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), the Supreme Court dealt with the interaction of remedies available under Title IV and those permitted under Title I, 29 U.S.C. §§ 411–415.[2] The Court held that the language and legislative history of Title IV made inappropriate an injunction under Title I of an ongoing union election. The case would have been even clearer had the votes in the election already been tabulated and the winners announced: "[T]he exclusivity provision included in § 403 plainly bars Title I relief when an individual union member chal-

---

1. Plaintiff originally requested that the installation of new officers be enjoined. When the Court denied that request on June 23 but requested further briefing and argument, the nature of the relief sought necessarily changed. This change does not affect the legal issues involved.

2. Title I, *inter alia,* guarantees union members equal rights to nominate candidates and vote in elections. 29 U.S.C. § 411.

lenges the validity of an election that has already been completed." *Id.* at 541, 104 S.Ct. at 2566.

■ It is true that plaintiff does not challenge the validity of the election, but wants only to briefly delay the winners from taking office. Still, the remedy she seeks, an injunction nullifying the installation of duly elected officers, is one reserved to actions under Title IV. It is the nature of relief requested that is the crucial factor under *Crowley. See* 467 U.S. at 543, 550, 104 S.Ct. at 2567, 2571.

The rationale of *Crowley* is equally applicable to Title V suits. When a union election has already been completed, a member's only avenue to challenge the results of that election is a complaint to the Secretary of Labor after the exhaustion of internal union remedies. Given the specificity and clarity of the statutory language of Title IV, there is no reason to believe that Congress intended the courts to interfere with the results of the election, even in the limited way that plaintiffs suggest here, in a case arising under Title V. Congress could have inserted a provision in Title V authorizing this type of injunctive relief. Nothing in the legislative history suggests that it ever considered doing so. *See generally* U.S. Dep't of Labor, *Legislative History of the Labor-Management Reporting and Disclosure Act of 1959,* at 841–1084 (1964).

The cases cited by plaintiff in support of her position that the Court has authority to grant the suggested injunctive relief are simply not on point. This Court in *Cefalo*

*v. Moffet,* 333 F.Supp. 1283 (D.D.C.), *aff'd in part,* 449 F.2d 1193 (D.C.Cir.1971), enjoined a union convention from voting on a proposed merger with another union while Title V charges were pending against its president.[3] Similar relief was granted in *Fry v. Bingel,* 116 L.R.R.M. (BNA) 2165 (N.D.Cal.1984), although the injunction was based on the plaintiffs' probability of success on their Title I claims, rather than their allegations under Title V. *See id.* at 2168. Neither of these decisions interfered with the results of elections regulated by Title IV. Indeed, the injunction in *Fry* tended to protect and further the will of union members as expressed in a recent election. *See id.* at 2166, 2168. The other cases relied on by plaintiff in her briefs are similarly, if not more, inapposite.[4]

Section 501(b) contemplates that unions should be given the opportunity to take action against officers accused of wrongdoing. For this reason, unions have been granted leave to intervene as plaintiffs in Title V proceedings after they have been commenced by a member. *See O'Connor v. Freyman,* 121 L.R.R.M. (BNA) 2387, 2391 (D.D.C.1985). Consideration by the union of a member's complaint, however, is not the "central provision of the entire statute." Plaintiff's Corrected Reply Memorandum at 3. In fact, Congress recognized that a complaint to the union itself will often be unavailing since the very officers accused of wrongdoing may be in control of the decision whether to file suit or take other action. Individual members are therefore permitted to bring suit in district

---

3. In considering and modifying the Court's injunction in *Cefalo,* the Court of Appeals noted:
   To the extent that the District Court may have refused the referendum proposed simply in order to ensure the holding of a new election of officers, we have grave doubts as to its jurisdiction to provide this relief.... In general, violations of Title IV rights are not to be redressed as breaches of fiduciary duties under Title V.
   449 F.2d at 1200 (footnote omitted).

4. At oral argument, plaintiff's counsel called the Court's attention to footnote 16 of *Crowley* and a case cited therein, *Ross v. International Brotherhood of Electrical Workers,* 513 F.2d 840 (9th

Cir.1975). The Supreme Court stated in footnote 16 that the exclusivity provision of Title IV may not necessarily bar post election relief for claims "that do not directly challenge the validity of an election already conducted." 467 U.S. at 541 n. 16, 104 S.Ct. at 2566 n. 16. In *Ross,* the Ninth Circuit held that Title IV did not bar a tort claim against a union officer arising out of his conduct during an election. The court specifically found that the plaintiff in that case did not "challenge [the election] or seek any relief which would interfere with the operation of the Local pursuant to the election." 513 F.2d at 842–43. It is clear that this case offers little comfort to the plaintiff Oliphant.

court after making a request of the union. Full "exhaustion" is not required. *Purcell v. Keane*, 406 F.2d 1195 (3d Cir.1969). While plaintiff, as a member of the old Board, might prefer that she have an opportunity to participate in the union's decision whether to take action against defendants and to debate directly with other members of the Board, she is not without remedy if instead the new Board considers and refuses to support her charges. Indeed, in granting plaintiff leave to file her own Title V complaint, Judge Greene found that plaintiff had met the prerequisite of requesting without success that the union take action on her claims. The injunction she requests is not a "remedy required to eliminate the claimed statutory violation," *Crowley*, 467 U.S. at 550, 104 S.Ct. at 2571, much less an appropriate one.[5]

It should also be noted that granting the injunction would cause the old Board to remain in office beyond the scheduled expiration of their terms, a result that the *Crowley* Court disapproved. 467 U.S. at 551, 104 S.Ct. at 2571. Article V, section 3 of the Union's bylaws provides that "[t]he term of office, for all officers, shall be three (3) years from the date of installation." This is consistent with the LMRDA's requirement that a union shall elect its officers at least once every three years. 29 U.S.C. § 481(b). Local 25's old Board was installed on June 21, 1983, and its three year term therefore expired on June 23, 1986.[6] It was therefore a logical interpretation of the bylaws, not a "mistake of fact" as urged by plaintiff's counsel, *see* Tr., June 26, 1986, at 6, that the Union was bound to install the new Board on that date.

Plaintiff argues that since Article VIII, section 1 of the bylaws provides that the Executive board shall meet monthly, her election to that body "guaranteed" her the right to participate in 36 monthly meetings. She believes that the installation of the new officers before the June Executive Board meeting violates that right and also conflicts with the instruction of the International Union that the installation should not take place before the fourth week of June. *See* Plaintiff's Complaint, Exhibit 23(b). It is unnecessary to recite here other tangentially relevant facts and the involved theory by which plaintiff reaches this conclusion. Even accepting plaintiff's contention that the installation of the new Board before the June meeting was politically motivated, defendants' straightforward application of the Union bylaws was reasonable and will not be disturbed.[7]

In sum, the relief requested by plaintiff is barred by the language and rationale of Title IV of the LMRDA, unsupported by caselaw under Title V, and not compelled by the circumstances of this case. Accordingly, it is this 2nd day of July, 1986,

### ORDERED

That this Court's order entered on June 24, 1986, allowing the installation of Local 25's officers to take place, shall remain in effect.

That the defendants shall file a responsive pleading to the complaint by July 21, 1986.

**5.** In this regard, it is unclear to the Court just what purpose having the old Board vote on plaintiff's allegations would serve. At oral argument, counsel indicated that plaintiff wants to be able to "force the waverers [of the old Board] to make up their minds whether they want to be defendants in this action or to go on record as being in favor of the complaint." Tr., June 26, 1986, at 42–43. Still, plaintiff and her supporters were clearly in the minority even on the old Board. *See* Memorandum of Local 25, Exhibit 10, at 1–2. It seems, then, that plaintiff's legal maneuvering and request for unusual injunctive

relief is all in pursuit of an unnecessary and probably fruitless endeavor.

**6.** June 21, 1986 fell on a Saturday.

**7.** Even if the Board meeting had taken place before the installation of officers, there is no certainty that plaintiff's complaint would have been on the agenda. Indeed, the law firm retained by the union to investigate plaintiff's allegations was accepting submissions by interested parties until June 27, 1986. Memorandum of Local 25, Exhibit 11.