Gregory P. NEELD, Plaintiff-Appellant,

v.

NATIONAL HOCKEY LEAGUE et al., Defendants-Appellees.

No. 76–3591.

United States Court of Appeals, Ninth Circuit.

April 11, 1979.

Frederick P. Furth (argued), Furth, Fahrner & Wong, San Francisco, Cal., for plaintiff-appellant.

Richard M. Mosk (argued), Mitchell, Silberberg & Knupp, Los Angeles, Cal., for defendants-appellees.

Before DUNIWAY and KILKENNY, Circuit Judges, and BELLONI, District Judge.[*]

BELLONI, District Judge:

Appellant, Gregory Neeld, is a one-eyed hockey player. Appellee, the National Hockey League, maintains a by-law[1] which prevents Neeld from playing in the League. Neeld has appealed from a summary judgment holding that the League's by-law does not violate the Sherman Act. Neeld has also sought a remand to the District Court for the purpose of pleading various other claims not asserted below. For the reasons below, we affirm the District Court and deny in its entirety the motion for remand.

## SHERMAN ACT CLAIM

The antitrust laws are designed to maintain and promote competition. Because nearly all contracts, combinations or other concerted actions restrain someone to some greater or lesser degree, Section 1 has been read to prohibit only unreasonable restraints. *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918).

In concerted action situations, the important inquiry is

"[W]hether the refusal to deal, manifested by a combination or conspiracy, is so *anticompetitive,* in purpose or effect, or both, as to be an unreasonable restraint of trade [emphasis is added]."

*Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery,* 454 F.2d 442, 452 (9th Cir. 1972); *Mutual Fund Investors v. Putnam Management Co.,* 553 F.2d 620, 626 (9th Cir. 1977).

The National Hockey League is composed of franchised member professional hockey teams.[2] Consequently, Neeld argues the by-law in question constitutes a *per se* illegal boycott. The many cases he cites for this proposition are not on point.[3]

---

[*] The Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

1. The National Hockey League's by-law 12.6 provides:

   "A player with only one eye, or one of whose eyes has a vision of only three-sixtieths (3-60ths) or under, shall not be eligible to play for a Member Club."

2. One of the League's defenses is that it is a "single unit" (*San Francisco Seals, LTD. v. National Hockey League,* 379 F.Supp. 966, 970 (C.D.Cal.1974)) for antitrust purposes and hence has acted in a unilateral way by adopting and maintaining by-law 12.6. Unilateral, independent actions do not violate Section 1; concerted action is needed. *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919). However, because we have affirmed the reasonableness of the by-law in any event, we have found it unnecessary to determine whether or not by-law 12.6 constitutes concerted action.

3. By-law 12.6 may well be a "boycott" under one or more of the definitions the Supreme Court provided in *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531 (1978), 98 S.Ct. 2923, 2930–2932, 57 L.Ed.2d 932. Nevertheless, that decision made clear that not all concerted refusals to deal warrant *per se* invali-

Not all concerted action is judged by the rule of *per se* illegality.[4] Fundamental to the *per se* rule is the rationale that the facts underlying certain conduct such as price fixing, *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); division of markets, *United States v. Addyston Pipe & Steel Co.,* 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899); group boycotts, or concerted refusals to deal, *Klor's v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); and other "naked restraints of trade with no purpose except stifling of competition," *White Motor Co. v. United States,* 372 U.S. 253, 263, 83 S.Ct. 696, 702, 9 L.Ed.2d 738 (1963); *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, LTD.,* 416 F.2d 71, 76 (9th Cir. 1969) need not be examined on a case by case basis. These types of agreements or practices "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal . . ." *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Additionally,

dation. A careful reading of the boycott cases that Neeld relies upon shows that *per se* rules have only been applied in the face of arguably demonstrable anticompetitiveness. *Ackerman-Chillingworth v. Pacific Electrical Contractors Association,* 579 F.2d 484, 490 n.7 (9th Cir. 1978). *See, e. g., Klor's v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); *United States v. Hilton Hotels Corp.,* 467 F.2d 1000 (9th Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973); *Washington State Bowling Prop. Ass'n. v. Pacific Lanes, Inc.,* 356 F.2d 371 (9th Cir. 1966). And while Neeld further argues that benign, non-commercial motives are covered by the antitrust laws, actually the proper inquiry is whether the motive behind the concerted action or the direct effect of the action or both is anti-competitive. *See e. g., National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978); *Fount-Wip, Inc. v. Reddi-Wip, Inc.,* 568 F.2d 1296, 1300 (9th Cir. 1978); *Mutual Fund Investors v. Putnam Management, Inc.,* 553 F.2d 620, 626 (9th Cir. 1977); *Bridge Corp. of America v. American Contract Bridge League, Inc.,* 428 F.2d 1365, 1370 (9th Cir. 1970); *Deesen v. Professional Golfers' Ass'n. of America,* 358 F.2d 165, 170–71 (9th Cir. 1966).

4. There are many recognized exceptions to the application of the *per se* rule to adjudge concerted action. In the field of vertical restraints, for example, the United States Supreme Court, in *Continental T.V. Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), recently reverted to "the standard articulated in *Northern Pacific R. Co.,* and reiterated in *White Motor,* * * * [that] when anti-competitive effects are shown to result from particular vertical restrictions they can be adequately policed under the rule of reason . ." *Id.* at 57 & 59, 97 S.Ct. at 2562.

Additionally, courts have acknowledged that in an "industry which necessarily requires some interdependence and cooperation, the *per se* rule should not be applied indiscriminately. In some sporting enterprises a few rules are essential to survival." *Hatley v. American Quarter Horse Ass'n,* 552 F.2d 646, 652 (5th Cir. 1977). *See also Deesen v. Professional Golfers' Ass'n. of America,* 358 F.2d 165 (9th Cir. 1966) (golf eligibility rule did not violate antitrust laws).

Our requirement of arguably demonstrable anti-competitiveness as the condition for *per se* adjudication in such an industry is analogous to the Fifth Circuit's practice of requiring "minimal indicia of anti-competitive purpose or effect" before applying *per se* rules to the self-regulatory actions taken by industries that necessarily require an unusually high degree of interdependence and cooperation. *Feminist Women's Health Center, Inc. v. Mohammad,* 586 F.2d 530 (5th Cir. 1978), 1978–2 Trade Cases ¶ 62,382, at page 76,282 (Dec. 20, 1978).

Nevertheless, when litigants seeking special treatment for their industries under the antitrust laws have sought to justify what are primarily anti-competitive practices under the Rule of Reason, the Supreme Court has recognized that

"The early cases . . . foreclose the argument that because of the special characteristics of a particular industry, monopolistic arrangements will better promote trade and commerce than competition. *United States v. Trans-Missouri Freight Ass'n.,* 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007; *United States v. Joint Traffic Ass'n.,* 171 U.S. 505, 573–577, 19 S.Ct. 25, 43 L.Ed. 259. That kind of argument is properly addressed to Congress and may justify an exemption from the statute for specific industries, but it is not permitted by the Rule of Reason."

*National Society of Professional Engineers,* 435 U.S. 679, 689–690, 98 S.Ct. 1355, 1364, 55 L.Ed.2d 637 (1978) (footnote omitted).

Finally, there is the implied exception for appropriately self-regulated industries which has been developed from *Silver v. New York Stock Exchange,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). *See generally Linseman v. World Hockey Ass'n.,* 439 F.Supp. 1315, 1321 (D.Conn.1977).

particularly apparent in cases where the *per se* rule is applicable is the fact that the exclusionary or coercive conduct, for example, is a direct affront to competition rather than merely an incidental effect.[5]

Here, however, the record amply supports the reasonableness of the by-law. We agree with the District Court's conclusion that the primary purpose and direct effect of the League's by-law was not anticompetitive but rather safety.

█ Neeld argues that if the rule of reason is applied then summary judgment was inappropriate because of alleged material issues of fact. Specifically, he contends the affidavits establish a disputed issue of fact whether a certain "safety mask" (designed especially for Neeld) would adequately protect Neeld from further injury.

"It is axiomatic that the moving party must sustain the burden of demonstrating 'the absence of a genuine issue as to any material fact,' . . . . A material issue is one which may affect the outcome of the litigation. . . . This burden is particularly rigorous in antitrust cases [especially]

\* \* \* \* \* \*

where motive and intent are important. . . . The often cited *Poller* [*Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458] case, however, has become a magic wand waved indiscriminately by those opposing summary judgment motions in antitrust actions. We note that the Court in *Poller* cautioned only that summary judgment 'be used sparingly. . . .', *Poller, supra,* 368 U.S., at 473, 82 S.Ct. 486, and not

that such relief is inappropriate in all antitrust cases."

*Mutual Fund Investors v. Putnam Management Co.,* 553 F.2d 620, 624 (9th Cir. 1977). Even assuming for purposes of argument that the adequacy of the "safety mask" for Neeld's protection is disputed, summary judgment was still appropriate since that fact alone would not affect the outcome of this case.

█ The by-law is not motivated by anticompetitiveness and Neeld does not actually contend that it is. Further, any anticompetitive effect is at most *de minimis, see Gough v. Rossmoor Corp.,* 585 F.2d 381, 386, 389 (9th Cir. 1978), and incidental to the primary purpose of promoting safety, both for Neeld, who lost his eye in a hockey game, and for all players who play with or against him. We take judicial notice that ice hockey is a very rough physical contact sport, and that there is bound to be danger to players who happen to be on Neeld's blind side, no matter how well his mask may protect his one good eye. Also of some importance and legitimate concern to the League and its members is the possibility of being sued for personal injuries to Neeld himself or to others, if Neeld is permitted to play. *See National Society of Professional Engineers v. United States,* 435 U.S. 679, 696 n.22, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978).

## MOTION FOR REMAND

█ Neeld has moved for this Court to vacate the summary judgment and allow amendment of his original complaint, or alternatively, to remand the case to allow Neeld to move the District Court for vacation and amendment. The various state

---

**5.** In fact, a case specifically relief upon by Neeld points out this important distinction between primary and incidental purposes and effects. In *United States v. Hilton Hotels Corp.,* 467 F.2d 1000 (9th Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973), the court found a *per se* illegal group boycott of an obviously anti-competitive nature. However, in so ruling the court expressly noted what that case was not:

"This is not a case in which joint activity having a primary purpose and direct effect of accomplishing a legitimate business objective is also alleged to have had an incidental and indirect adverse effect upon the business of some competitors. . . .[2]

[2] Of course, such conduct is not necessarily exonerated; its legality is tested under the 'rule of reason.' . . ."

\* \* \* \* \* \*

*Id.* at 1003.

law claims [6] he now seeks to assert were not asserted below. However, even if they had been they would have been pendent to the antitrust claim. In view of our disposition of the federal action, these state claims lack federal jurisdiction.

Defendants argue the various new claims are merely different legal theories to recover upon the same operative facts and since they were not timely asserted they are now barred by *res judicata*. We do not reach this contention. If these theories are presented in a state court, that court can decide if *res judicata* applies.

AFFIRMED and MOTION DENIED.

---

**6.** Neeld does make an argument to assert some claim under 42 U.S.C. § 1983 (a civil rights act). However, he does not adequately explain how the federal law would apply and furthermore, we are convinced that under the circumstances of this case there is not sufficient state action involvement to maintain the action even if federal law were to apply.