George COLEMAN and Juanita Bruce, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Minnesota Mining and Manufacturing Company and General Electric Ceramics, Inc., Defendants.

Civ. No. 1–84–534.

United States District Court, E.D. Tennessee, S.D.

June 5, 1986.*

Corrected June 23, 1986.

---

* Filed 6/5/86, typographical errors corrected and memorandum filed 6/23/86 to be effective as of 6/5/86.

W. Neil Thomas, III, Thomas, Mann & Gossett, P.C., Chattanooga, Tenn., for plaintiffs.

Hugh J. Moore, Jr., Witt, Gaither & Whitaker, Chattanooga, Tenn., for defendants GE & GEC.

Gary D. Lander, Donna L. Pierce, Chambliss, Bahner, Crutchfield, Gaston & Irvine, Chattanooga, Tenn., for defendant 3M.

## MEMORANDUM

EDGAR, District Judge.

This matter is before the Court on defendants' various motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Jurisdiction of this Court arises under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1 and 15. The Court previously dismissed plaintiffs' common law claims on January 27, 1986 (Court File Nos. 119 and 120), on the finding that these claims were preempted by federal law. The Court has also denied plaintiffs' request for a designation of this suit as a class action (Court File No. 71). Defendants now seek summary judgment on plaintiffs' federal claims on the basis that no genuine issue of material fact exists and that they are entitled to a judgment as a matter of law. All parties have extensively briefed the issues presented. Also before the Court are a number of constitutional claims contingent on the Court's resolution of the above matters.

## I. *Facts*

This case really begins with the recognition that American companies have had difficulty competing in the world market in a variety of areas and product lines. Minnesota Mining and Manufacturing Company ("3M") owned plants in Chattanooga, Tennessee, and Laurens, South Carolina, which manufactured industrial ceramic tiles. 3M found the business unprofitable and in 1983 negotiated the sale of its Technical Ceramics Division to General Electric Company, specifically, to a division of the company called General Electric Ceramics, Inc. (hereinafter collectively called "GE"). At the time of the sale, plaintiff Coleman was employed at the Laurens plant and plaintiff Bruce was employed at the Chattanooga plant. Both individuals are still employed at their respective plants though they now work for GE. At the time of the sale from 3M to GE, plaintiffs were terminated by 3M and were hired by GE. Plaintiffs signed statements that they would not seek employment with 3M for a period of two years if they took employment with GE, and 3M agreed not to rehire the plaintiffs for this period of time if the plaintiffs accepted employment with GE.

Plaintiffs were enrolled in various pension and employee welfare benefit plans while employed at 3M. Among the 3M welfare benefit plans is a program for paying severance pay under certain specified conditions which are in dispute in this proceeding. GE also has benefit plans for their employees and the plaintiffs are currently participants in these plans.

Presentations were made to 3M employees at the time of the sale concerning the status of these employees vis-a-vis 3M and detailing their opportunity to be employed by GE. Presentations on the companies' benefit plans were made but there is a dispute as to the nature and content of these presentations. Plaintiffs claim that the employees were promised that their benefits at GE would be "equal to or better than the benefits" provided by 3M. Plaintiffs also allege that defendants omitted to inform plaintiffs that some of the benefits at GE were inferior to those benefits provided at 3M or that employees would have to pay for many benefits which were provided free by 3M. Plaintiffs detail a number of differences between the plans involving items such as eligibility for early retirement, medical insurance packages, dental insurance availability, and retiree benefits. Plaintiffs make no claim that they lost any vested rights.

Plaintiffs' make a number of claims under ERISA and other laws. First, the plaintiffs contend that they were denied their rights to severance pay from 3M by transferring to employment with GE. Second, plaintiffs assert that the defendants misrepresented the nature and quality of the benefits provided by GE in contrast to those then provided by 3M. Third, the plaintiffs argue that there has been a

breach of fiduciary duties on the part of GE and that 3M is also liable for their acquiescence and participation in the representations made by GE. Plaintiffs also ascribe an independent fiduciary duty to 3M. Fourth, plaintiffs assert a breach, by both defendants, of a contract based on ERISA. Fifth, defendants claim that the rehire agreement between GE and 3M violated the antitrust laws of the United States. Finally, defendants make two contingent constitutional challenges relating to preemption of common law claims and the right to a jury trial.

Five summary judgment motions are presently pending before the Court. Three motions have been filed by GE which address the plaintiffs' antitrust claim (Court File Nos. 131 and 132), ERISA claims (Court File Nos. 150 and 151), and plaintiffs' ERISA breach of contract claim and constitutional claim (Court File Nos. 177 and 178). 3M has filed two motions which address plaintiffs' ERISA claim (Court File Nos. 139, 140 and 141) and plaintiffs' ERISA contract and constitutional claims (Court File Nos. 162 and 163). 3M joins in GE's brief on the antitrust issue. Both sides have filed a number of responsive briefs.

The posture of 3M as a seller and GE as a buyer clearly affects this Court's determination concerning the ERISA claims. The Court will analyze these issues with respect to the individual defendants. After very careful consideration, though, the Court must note its concurrence in this case with the conclusion of The Honorable Seybourn H. Lynne, Senior United States District Judge for the Northern Division of Alabama, who decided a very similar case and declared: "The plaintiffs' attempts to convert a routine business transaction into a series of state and federal wrongs are based upon severely strained interpretations of law to which this Court cannot accede." *Phillips v. Amoco Oil Co.,* 614 F.Supp. 694, 726 (1985).

## II. *ERISA*

ERISA provides a comprehensive framework governing the administration of private employee pension and benefit plans. *Alessi v. Raybestos-Manhatten, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1215 (8th Cir.), *cert. denied,* 454 U.S. 968 and 1084, 102 S.Ct. 512 and 641, 70 L.Ed.2d 384 and 619 (1981). To bolster the federal regulation of these plans, Congress provided a broad exemption clause negating almost all common law causes of action. 29 U.S.C. § 1144(a); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Courts have found this broad preemption because ERISA provides a "full range of legal and equitable remedies [cite omitted]." *Authier v. Ginsberg,* 757 F.2d 796, 802 (6th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 108, 88 L.Ed.2d 177 (1985); *see also Justice v. Bankers Trust Co., Inc.,* 607 F.Supp. 527, 531 (N.D.Ala.1985). Only where a state statute does not impact on "the structure, the administration, or the type of benefits provided by an ERISA plan" will the state statute not be invalidated. *Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320, 327 (2nd Cir.), *appeal pending,* —— U.S. ——, 106 S.Ct. 378, 88 L.Ed.2d 332 (1985). Plaintiffs make claims both under ERISA and under common law.

■ The most difficult task facing this Court is defining causes of action which are not clearly established by the terms of the statute. For example, defendant 3M makes much of the fact that no specific misrepresentation clause exists in ERISA. The Court has no argument with this claim, as far as it goes. But, the Court feels compelled, by virtue of its finding of a broad preemption clause, to make an extensive inquiry in the interstices of the statute in order to insure that Congress' intent is not misconstrued to wholly eliminate all possible causes of action by virtue of a broad reading of the preemption section coupled with a narrow reading of the statute. Given the remedial nature of the statute, the statute is to be read in its broadest terms covering most aspects of pension and

employee welfare benefit plans. *Petrella v. NL Industries, Inc.,* 529 F.Supp. 1357, 1361 (D.N.J.1982).

ERISA by its terms covers pension and welfare benefit plans and mandates common reporting and disclosure requirements, 29 U.S.C. §§ 1021–31, as well as standards of fiduciary conduct. 29 U.S.C. §§ 1101–14. A major distinction exists between these benefits, though, in that ERISA establishes minimum substantive content provisions for pension plans but not for welfare benefit plans. *Adcock v. Firestone Tire & Rubber Company,* 616 F.Supp. 409, 414 (M.D.Tenn.1985). An employee can accrue a vested interest in a pension plan upon meeting eligibility requirements for participation but can never vest in a welfare benefit plan. *Id.*

■ Absent statutory provisions concerning employees' rights under welfare benefit plans, the Court must examine protections available from the general body of federal law. *See Menhorn v. Firestone Tire & Rubber Company,* 738 F.2d 1496 (9th Cir.1984). The Court is required to fashion a body of law to govern the administration and application of ERISA in order to insure that the broad preemption clause of ERISA does not undercut the desire of the framers of ERISA to protect pension and employee welfare benefit plans. *See Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1501–02 (9th Cir.1985). The Courts must thus create a federal common law concerning ERISA where a state law is preempted and no specific federal provision governs. *Wayne Chemical, Inc. v. Columbus Agency Service Corp.,* 426 F.Supp. 316, 322 (N.D.Ind.), *aff'd and modified,* 567 F.2d 692 (7th Cir.1977); *Hansen v. White Farm Equipment Company,* 42 B.R. 1005, 1014 (N.D.Ohio 1984).[1]

Throughout this opinion, the Court assumes that ERISA provides a cause of action for substantive relief, at least as the claims relate to 3M. Nonetheless and as discussed below, the Court finds one arguable aspect where the statute does not cover the relationship between plaintiffs and GE and so the Court has undertaken an analysis of common law claims as they relate to these particular parties.

### III. *General ERISA Claims and Due Process Claim*

Plaintiffs' second amended complaint filed on March 26, 1986, reiterates most of the claims outlined in their original and first amended complaint and adds the constitutional and ERISA breach of contract claims. This part of the memorandum addresses plaintiffs' basic ERISA claims which are outlined in the first cause of action and their ERISA breach of contract claim stated in their sixth cause of action.[2]

Whether the plaintiffs have a cause of action under ERISA depends upon whether the defendants had a fiduciary duty to plaintiffs and, if so, whether this duty was violated. The breach of contract claim parallels this claim, because a contract under ERISA can only arise within the parameters of ERISA. Plaintiffs also claim that the failure of 3M to give them severance pay violated ERISA. Finally, plaintiffs allege that 3M violated ERISA by failing to provide a summary description of its severance pay policy and that GE violated ERISA by providing materials to plaintiffs that did not accurately reflect employee benefits. The following examines the general ERISA claims in relation to GE and 3M, while the severance pay issue is examined separately.

---

1. The Court refers to the excellent opinion of The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, in *Adcock* for a fuller discussion on the development of federal common law as it relates to ERISA. 616 F.Supp. at 413–17. *See also Menhorn,* 738 F.2d 1496.

2. Specifically, plaintiffs argue that defendants "violated their fiduciary obligations to plaintiffs not to misrepresent the various benefits, or to omit to make statements necessary for the statements made not to misrepresentations." (First cause of action). Plaintiffs also assert that the failure to provide equivalent benefits "constitutes a breach of contract under the provisions of ERISA...." (Sixth cause of action).

### A. *GE*

GE and 3M stand in different relationships to the plaintiffs. 3M as the seller had a fiduciary duty to the plaintiffs since 3M served as administrator of the plan. GE, on the other hand, had no fiduciary duty under the strict terms of the statute to the plaintiffs but, rather, if any violation is to be found, may only be liable as a third-party participant in a fraud or violation committed by a fiduciary. Plaintiffs allege that the misrepresentations on the part of the defendants occurred by virtue of what was said and presented to the employees at the time of sale and not by virtue of the particulars of the sale. Plaintiffs thus attempt to claim a very narrow ground to stand on, one which does not seek compensation for any diminution in benefits but only seeks compensation for an alleged misrepresentation relating to the diminution.

A fiduciary relationship only arises towards participants in an ERISA plan. *Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, Inc.*, 721 F.2d 654, 655 (9th Cir.1983). A fiduciary relationship does not exist towards potential participants in a plan and such potential participants have no standing to sue for misrepresentation and breach of fiduciary duty under ERISA. *See, generally, Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2nd Cir.1985); *see also Kuntz v. Reese*, 785 F.2d 1410, 1411–12 (9th Cir.1986). A participant is defined by the statute as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). For an individual to be a participant, he or she must actually be a current employee or be a former employee who has acquired vested rights.

*Nugent v. Jesuit High School New Orleans*, 625 F.2d 1285, 1287–88 (5th Cir. 1980); *see also Kuntz*, 785 F.2d at 1411. Neither Coleman nor Bruce were employees of GE at the time the alleged misrepresentations occurred. Therefore, no direct fiduciary duty can arise from GE running to Coleman or Bruce under the terms of the statute.

The plaintiffs have a difficult, if not impossible, task in sustaining their claim that fiduciary duties from GE arise in the context of this business transaction. In a similar case in the Northern District of Alabama, the Court there stated: "The fiduciary duty provisions of ERISA are not implicated in the sale of a business or a portion of a business merely because the terms of a sale will affect the terms and conditions of contingent future retirement benefits." *Phillips v. Amoco Oil Company*, 614 F.Supp. at 717; *see, generally, Sutton v. Weirton Steel Div. of Nat'l. Steel Corp.*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1025, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1974).[3] This Court understands, though, that this statement may say too much since the broad preemption of ERISA requires that the Court be judicious in finding that no violation of ERISA has occurred. *See Adcock v. Firestone Tire & Rubber Co.*, 616 F.Supp. 409, 415–16 (M.D. Tenn.1985). Nonetheless, as to defendant GE, the cases are clear that these defendants have no fiduciary duty arising out of the employer/employee context under the terms of the statute.

Needless to say, for the reasons stated above, no fiduciary duty runs from GE to the plaintiffs. The plaintiffs suggest that a fiduciary duty runs with respect to "one with superior knowledge" and that a duty exists from GE to the plaintiffs. *See Connelly v. Balkwill*, 174 F.Supp. 49 (N.D.Ohio 1959) (decided under Ohio law). Plaintiffs also claim that once GE undertook to compare the plans provided by 3M and GE that GE had a duty to do so carefully. *See*

---

**3.** *Sutton* affirmed the district court opinions in *Sutton v. Weirton Steel Div. of Nat'l. Steel Corp.*, 567 F.Supp. 1184 (N.D.W.V.1983), and *Dhayer v.* *Weirton Steel Div. of Nat'l. Steel Corp.*, 571 F.Supp. 316 (N.D.W.V.1983). This Court draws upon all three opinions in its decision.

*NLRB v. Amax Coal Co.*, 453 U.S. 322, 334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981). In addition, plaintiffs make a sweeping generalization concerning the duty of GE and 3M not to lie about benefits provided. Each of these arguments is an attempt to skirt the requirement that GE be a fiduciary but these arguments are not convincing. Plaintiffs time and again seek to distinguish defendants' cases by claiming that they did not involve a misrepresentation by a plan fiduciary, thus recognizing that a defendant must be a fiduciary to fall under the statute. *See, e.g., Monson v. Century Mfg. Co.*, 739 F.2d 1293 (8th Cir. 1984).[4] The Court need not reach the question of whether GE's actions violated ERISA because plaintiffs have no standing under ERISA to sue GE.

Plaintiffs' constitutional challenge to ERISA is contingent on this Court denying their causes of action under ERISA. The implications of this challenge are different for the two defendants because the defendants stand in different relationships towards the plaintiffs. For purposes here, the Court will assume without deciding that there is a colorable claim of unconstitutionality as it relates to GE. Therefore, the Court will determine whether the plaintiffs have stated a cause of action under common law theories of misrepresentation or breach of contract.[5]

The specific claims of the plaintiffs relate to the generalized allegation that the GE benefits "are not as good as" those provided by 3M. Plaintiffs also assert that the defendants stated that the plans were both "good packages." Plaintiffs urge that GE has also breached some type of contract. From the above language, plaintiffs hope this Court finds a cause of action. For a number of reasons, the Court finds that the plaintiffs fail to state a claim upon which relief can be granted.[6]

Two main problems exist with plaintiffs' claims. First, statements made, or allegedly made, are too vague to be actionable. *See McElroy*, 632 S.W.2d at 132. Plaintiffs seek to create a cause of action out of little or no substance. For fraud or misrepresentation, there must be a misrepresentation and it must be reasonable to rely on such misrepresentation. *Williams v. Van Hersh*, 578 S.W.2d 373, 376 (Tenn.Ct.App. 1979). For there to be a contract, there must be a meeting of the minds as to the terms of the contract, whether termed an ERISA contract or a regular contract. *See, e.g., Soar v. National Football League Players Assoc.*, 550 F.2d 1287, 1289–90 (1st Cir.1977); *see also Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924, 933 (Tenn.Ct.App.1984).[7] The vague amor-

---

4. A fiduciary under ERISA is one who exercises discretionary authority or control respecting management of an ERISA plan or one who gives investment advice for compensation or who has discretionary authority in the administration of such a plan. 29 U.S.C. § 1002(21)(A). Needless to say, these duties can only run to people who are beneficiaries pursuant to the statute.

5. The Ninth Circuit in *Kuntz v. Reese* implicitly recognized that common law claims are not preempted when ERISA, by its own terms, is not applicable. The *Kuntz* court affirmed the dismissal of the plaintiffs' suit "without prejudice to state law claims the plaintiffs might pursue." 785 F.2d at 1412. The Court finds it unnecessary to reach this issue given its alternative disposition on the merits and in light of the broad sweep of ERISA preemption. Nonetheless, the Court believes that fundamentally it makes sense not to permit preemption to operate in a vacuum, preempting common law claims but providing no alternative federal ac-

tion—at least to the extent that the retention of the common law actions does not impede the operation or application of the federal scheme.

6. Initially, the Court notes that from GE's prospective, the matters discussed appear to relate to future facts. *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn.1978); *see also McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127 (Tenn.Ct.App.1982). Plaintiffs protest that Tennessee does recognize, in certain instances, misrepresentation based on future promises. *See Helton v. Union Oil Co. of California*, No. 1–81–44, slip op. (E.D.Tenn. September 22, 1982). But, the rule in Tennessee appears to be that misrepresentations relating to future facts are not actionable, *See Fowler*, 575 S.W.2d at 499, and they certainly are not actionable on these facts.

7. The Court also notes that it is questionable whether an oral contract or modification can occur under the terms of ERISA. 29 U.S.C.

phous statements allegedly made are insufficient for either cause of action. Furthermore, the deposition of Charles T. Williams with Exhibit 1 attached, indicates that the plaintiffs had a full opportunity to ascertain the quality of the benefits. There simply was no reason for plaintiffs to have relied on vague and generalized statements comparing the plans.

More significantly, nothing in the record suggests any detrimental reliance on the part of either plaintiff relating to the alleged misrepresentations. Detrimental reliance is the cornerstone of a misrepresentation action. *See e.g., Williams,* 578 S.W.2d at 376; *Graham v. First American National Bank,* 594 S.W.2d 723, 725 (Tenn. Ct.App.1980). In fact, plaintiff Bruce was given releases from the two-year no rehire agreement between 3M and GE. *See* Bruce Deposition, p. 40. Plaintiff Coleman does not even desire to be restored to a position with 3M but simply seeks benefits from GE which "are as good as" those offered by 3M. *See* Coleman Deposition, p. 61. Regardless of whether 3M had a liberal intracompany transfer policy, a fact alleged by plaintiffs, the existence of such a policy is immaterial since Bruce had a chance to return to 3M and Coleman has no interest in working for 3M.

Realistically, neither plaintiff would be employed at this moment in their current location if they had not agreed to take employment with GE; for it is undisputed that if the GE sale had not been completed, 3M intended to leave the business of manufacturing industrial ceramics and indeed was going to close its plants or sell its business. In addition, the plaintiffs have not produced facts which demonstrate what they would have done had the sale not been consummated, nor do they even allege that there were opportunities missed by virtue of their taking employment with GE. The only thing these plaintiffs did was remain in place in their positions, albeit with a new employer, a situation which appears to be better than being unemployed.

§ 1102(a)(1); *see, generally, Nachwalter v.*

One last problem exists with this possible cause of action and that relates to the question of damages. The damages which plaintiffs seek are entirely speculative. Perhaps one measure would be the possible benefits associated with other employment, but that claim does not exist in this case since other employment was not a consideration. A second possible approach would be to give these employees vested rights based on their 3M benefits, different than those received by other GE employees, in a program in which they are not even vested. What these plaintiffs seek to do is to freeze the 3M benefits while they are working at GE even though ERISA by its terms would have allowed 3M or GE to modify or terminate these benefits. While it is arguable that ERISA does not preempt every possible claim, including those present here, the Court will not permit a construction which in essence would have the common law preempt ERISA.

■ Extracontractual damages apparently are not available under ERISA. *See, e.g., Mass. Mutual Life Ins. Co. v. Russell,* 473 U.S. ——, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96, 105 (1985) (issue of availability for improper or untimely processing or payment of benefits). Though this claim arguably falls outside of ERISA, the locking in of benefits into a plan would impact on an ERISA plan and would give a remedy specifically excluded by ERISA. Even if such damages were termed "special damages" and paid in a lump sum, ERISA does not permit the imposition of any specific benefit, *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees,* 740 F.2d 454, 456 (6th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985), and this Court cannot give a direct remedy which would impact a plan indirectly. Nevertheless, these plaintiffs were not, and could not be, damaged by staying in place since their jobs would have been eliminated. *See Phillips,* 614 F.Supp. at 705. The Court cannot ascer-

*Christie,* 611 F.Supp. 655 (S.D.Fla.1985).

tain any conceivable damages resulting from plaintiffs staying at their jobs.

## B. *3M*

Plaintiffs argue that there are valid claims for misrepresentation, breach of contract, and breach of fiduciary duty against 3M. Plaintiffs identify two issues, the first being whether 3M acted arbitrarily and capriciously and, secondly, whether 3M breached its fiduciary duty by participating in presentations which were allegedly misleading to the employees. Plaintiffs argue that 3M is responsible for any misrepresentations made by General Electric by a combination of its fiduciary duty to its employees and by what it alleges are traditional principles of trust law, holding responsible third parties who are active or knowledgeable participants in a misrepresentation. Plaintiffs discuss the alleged misrepresentations in terms of the duty of a party to be clear, concise, and accurate in the presentations that it makes. Plaintiffs also assert that a contract arose from the representations made by 3M.

3M claims that it made no misrepresentation concerning the benefits provided by GE and that, in fact, neither company commented about the benefits provided by the other. Defendant 3M also claims the company did not have the responsibility to detail every point of difference between benefits offered by the two different companies. Most significantly, 3M argues that the rights affected were contingent benefits and, therefore, not subject to the provisions of ERISA. 3M also discusses severance pay but that issue will be dealt with later in this opinion.

The Court must determine whether the benefits at issue were contingent such that no violation of ERISA could occur regardless of whether a misrepresentation as to the benefits was made and such that no contract could arise. If the benefits were contingent, 3M had no duty; if the benefits were vested, then there would be an issue as to whether any damages occurred as a result of the alleged misrepresentations. The Court notes that the record is clear

that 3M intended to get out of the business of producing technical ceramics and that it planned to either sell or close its plants in Laurens and Chattanooga.

ERISA does not prevent elimination of even previously offered benefits as long as they are not vested or accrued. *Phillips*, 614 F.Supp. at 710. As one court has stated succinctly: "It is not per se unlawful to alter a pension plan with respect to prospective benefits, provided the change doesn't violate other ERISA requirements." *Dhayer*, 571 F.Supp. at 324. ERISA does not require an employer to pay benefits before an employee reaches "normal retirement age." *Id.* ERISA does not cover conditional benefits and they may be eliminated without violating ERISA. *Id.; see also McBarron v. S & T Industries, Inc.*, 771 F.2d 94, 97 (6th Cir. 1985). Only accrued benefits are non-forfeitable. *Sutton*, 724 F.2d at 410; *Petrella*, 529 F.Supp. at 1366. Welfare benefits are never vested, and a refusal to pay them is analyzed only under an arbitrary and capricious standard. *Adcock*, 616 F.Supp. at 421, *see generally Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1213 (7th Cir. 1983).

The first consideration is whether there was a fiduciary duty on the part of 3M in the negotiation of the sale of its technical ceramics division to GE. The court in *Phillips* addressed this issue squarely where it held that Amoco, the selling corporation, had no duty to negotiate on behalf of its workers in the sale of a plant to Norgas. 614 F.Supp. at 718. The court in *Dhayer* reached the same conclusion stating:

> When a corporate employer negotiates the terms of a sale of a division whose employees are participants in a pension plan, the negotiations that affect the terms and conditions of future pension benefits ... do not implicate fiduciary duties as to the pension fund. Such negotiations are distinct from actually administering a plan....

571 F.Supp. at 328. Thus, in general, an employer's fiduciary duties do not extend to the negotiations of the sale of a going concern and are not violative of fiduciary duties described in ERISA. *See* 29 U.S.C. §§ 1104 and 1106.

Plaintiffs assert that 3M has violated its duties outlined at 29 U.S.C. §§ 1104 and 1106. Section 1104 requires a fiduciary to discharge his duties to a plan "solely in the interest of the participants and beneficiaries." Section 1106 is more detailed and prevents the fiduciary from engaging in certain specified transactions.[8] Neither of these sections are implicated in the present case. Clearly, there was no violation of the specific prohibited activities in § 1106. As to the more general duty, the courts have held that the fact that an employer serves in a dual capacity as both employer and fiduciary does not prevent an employer from engaging in normal business activity, such as the sale of a division. *Dhayer*, 571 F.Supp. at 328.

Plaintiffs assert that 3M misrepresented the benefits available under the GE plan and misrepresented comparisons between the two plans. Plaintiffs assert that 3M was in a position of superior knowledge and that this coupled with its fiduciary duty to the plaintiffs is sufficient to state a cause of action. This inquiry turns on whether, assuming the facts as presented by the plaintiff are true, it makes any difference. Since 3M was free to terminate the employees at the completion of its sale of the going concern, and since the benefits at issue were contingent, any misrepresentation is immaterial because the plaintiffs have not been damaged in any manner. As to defendant 3M, the careers of the plaintiffs were over and they could either accept employment at GE or enter into the marketplace as unemployed individuals.

The Court cannot find a fiduciary duty running from 3M to the employees in light of the above findings. Furthermore, the record does not support the contention that, accepting the facts in the light most favorable to the plaintiffs, that any damage befell the plaintiffs as a result of any misrepresentations. While the plaintiffs might have a cause of action under ERISA, they simply do not have the facts to support this action. The Court also cannot find that a contract arose under the terms of ERISA since 3M was terminating its relationship with the plaintiffs. Furthermore, the same reasoning which supports not finding a contract with GE given the lack of agreement on any definite terms, also applies to any alleged contract with 3M. Summary judgment will be GRANTED to defendant 3M on the general ERISA claims including the ERISA breach of contract claim.

Plaintiffs assert that if summary judgment is granted to defendant 3M on the ERISA claim then ERISA is unconstitutional. The Court begins with the presumption that the laws of Congress are constitutional. *See United States v. Five Gambling Devices Labled in Part "Mills"*, 346 U.S. 441, 449, 74 S.Ct. 190, 194, 98 L.Ed. 179 (1953). Plaintiffs seek to establish a constitutional right for a common law cause of action despite the fact that it is clear that Congress may legislate in the area of pension and employee benefits and that it may preempt state laws which conflict or touch on the area in any manner. *Alessi*, 451 U.S. at 522–23, 101 S.Ct. at 1905–06.

Plaintiffs' constitutional contention is deficient in two areas. First, the plaintiffs misunderstand the distinction between there being no cause of action available and the inability of the plaintiffs to state facts which are sufficient to sustain a cause of

---

**8.** 29 U.S.C. § 1106(a)(1) reads: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—(A) sale or exchange, or leasing, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; (C) furnishing of goods, services, or facilities between the plan and a party in interest; (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title."

action. In the present matter, ERISA clearly applies because the plaintiffs were current employees, and therefore participants, in the 3M plan. But, this alone does not mean that a cause of action is stated. ERISA by its terms requires rights to be vested and not contingent in order to sustain a cause of action. Or alternatively, if dealing with contingent rights and examining the facts in the light most favorable to plaintiffs, a denial of benefits must be arbitrary and capricious when they relate to employee welfare benefits. *See Petrella*, 529 F.Supp. at 1367.

Neither situation is present here. The benefits which the plaintiffs seek were not vested and 3M was free to terminate these benefits at any time. *Id.* at 1366; *Phillips*, 614 F.Supp. at 710 ("an employee's 'rights' to such benefits may be forfeited entirely if his service with the employer is terminated before he becomes eligible under the plan's terms for payment of such benefits"). In addition, there is no argument that 3M acted in an arbitrary or capricious manner and that some employees, absent the one exception discussed below in the severance pay area, were treated differently from other employees. By the clear terms of the statute, the cause of action against 3M comes under the terms of the statute but the plaintiffs fail to plead sufficient facts to sustain the cause of action.

■ Second, the statute is constitutional. Congress is free to preempt common law causes of action. *See Mondou v. New York, New Haven & Hartford Company*, 223 U.S. 1, 54, 32 S.Ct. 169, 176, 56 L.Ed. 327 (1912). Congress may create new rights or abolish common law rights to attain permissible legislative objectives. *Silver v. Silver*, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929); *see also Sparks v. Wyeth Laboratories, Inc.*, 431 F.Supp. 411 (W.D.Ok.1977). No property interest is at stake here, as evident by the contingent nature of the benefits, and all Congress has done is change the basis for a cause of

action.[9] The objectives here are permissible. *See Alessi*, 451 U.S. 504, 101 S.Ct. 1895. The statute is constitutional on its face and as applied to these plaintiffs.

## C. *Severance Pay*

The plaintiffs claim that they are entitled to severance pay from 3M and that this is a vested right which is part of their employee welfare benefit packages. 3M argues that it does not provide severance pay to employees for the sale of divisions when its employees become employed by the purchaser; rather, it asserts that severance pay is only payable for shutdowns and other terminations of employment when employees are left without work.

The severance pay issue is complicated by the granting of such, claimed by 3M to be an exception, to one individual (Carlisle from the Laurens plant) for reasons discussed in detail in 3M's brief. 3M argues that the denial of severance pay to the plaintiffs was not arbitrary or capricious per the standard required under § 1104. 3M admits that it failed to disclose certain documents relating to severance pay, as alleged by the plaintiffs, though it asserts that the plaintiffs did not request the information. 3M argues that the mere failure to report and disclose such benefits is not sufficient to sustain a private cause of action.

■ Severance pay is an employee welfare benefit under ERISA. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149 (6th Cir.1985); *Sutton*, 567 F.Supp. at 1202. In *Blakeman*, Mead sold three of its divisions and employees at those facilities were terminated and rehired by the successor employer. Mead had in place a severance plan, though the plan guidelines were never distributed or adopted by corporate resolution, but it did not apply to the sale of a division or facility. The Court considered whether the denial of severance pay was arbitrary, capricious, in bad faith, erroneous as a matter of law, or unsupported by

---

**9.** The Court also notes that this case and its facts arose after the enactment of ERISA, so there is no issue as to whether a right in terms of a common law cause of action which might arguably already have vested was taken away by the enactment of congressional legislation.

substantial evidence. *Id.; see also Jung v. FMC Corp.*, 755 F.2d 708, 711 (9th Cir. 1985). The Mead guidelines specifically indicated that they were to be construed flexibly, that the severance allowance was for those "involuntarily terminated," and that there was a history of denying severance payments to employees terminated and rehired in a sale of a Mead division. 779 F.2d at 1150. The *Blakeman* court found that the denial of severance pay was neither arbitrary nor capricious and sustained a grant of summary judgment to the defendant. *Id.* at 1151.

Plaintiffs cite the case of *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985), as supporting their position that the denial of severance pay is actionable. Yet, the very language of *Blau* requires violations which are wholesale and flagrant, the Court in *Blau* finding pervasive violations of ERISA in order to sustain a cause of action. *Id.* at 1353–54.

This claim will only be sustained if the denial of severance pay was arbitrary or capricious on the part of the defendant since severance pay is a welfare benefit. *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1521 (11th Cir.1985). In *Anderson*, employees, as present here, were rehired by the successor employer at the same salary but with the loss of seniority. The Court noted several factors which it considered relevant in determining whether a party acted in an arbitrary or capricious manner: (1) uniformity of construction; (2) "fair reading" of a policy and the reasonableness of that reading; (3) unanticipated costs; (4) internal consistency in interpretation; (5) relevant regulations of appropriate agencies; and (6) the factual background of a decision and any indication of bad faith. *Id.* at 1522. The Court in *Anderson* upheld the denial of benefits by virtue of the even-handedness of treatment which was evident and by the past practices of the company.

▪ Plaintiffs allege that the failure of 3M to state in its employee manual that severance pay was unavailable in the sale of a going concern demonstrated an intention to provide severance pay in these circumstances. Plaintiffs seek to show by comparison that earlier versions of the 3M employee manual included an exception to the plan for the sale of a going concern, thus implying an intent to now provide benefits for such situations.

Defendant 3M has not paid severance pay with respect to plant sales except in one instance at the Laurens plant. That exception is distinguishable from the present facts. Plaintiff Bruce knew that severance pay was only available for shutdowns and plaintiff Coleman's understanding was based solely on this one exception. Severance pay by nature is to ease the transition to unemployment. That situation is simply not present in this case. *See Pabst Brewing Co. v. Anger*, 610 F.Supp. 214, 217 (D.Minn.1985); *Sutton*, 567 F.Supp. at 1202; *Pinto v. Zenith Radio Corp.*, 480 F.Supp. 361, 364 (N.D.Ill. 1979), *aff'd*, 618 F.2d 110 (7th Cir.1980). In *Sutton*, the Court analyzed severance pay with respect to the ability of employees to find alternative employment. The Court concluded: "It can be said with certainty that any employee of National Steel who becomes employed by the new employer following the transition of ownership is not entitled to a severance allowance under the contract or under ERISA." 567 F.Supp. at 1203.

Plaintiffs also seek to sustain this claim by virtue of the failure of 3M to supply information on the severance pay plan to its employees. The mere fact that a reporting violation has occurred is insufficient to invoke the remedies of ERISA. *Ausloos v. Chromalloy American Corp.*, 626 F.Supp. 324, 327 (E.D.Wisc.1986). Absent a showing of bad faith on 3M's part, the mere failure to disclose could not cause a substantive harm on plaintiffs which would warrant a finding that 3M acted arbitrarily and capriciously. *Adcock*, 616 F.Supp. at 420. The violations of the reporting and disclosure requirements must be quite severe to sustain a cause of action.

*Pabst Brewing,* 610 F.Supp. at 217. 3M has interpreted its severance pay policy consistently which is far more significant than a mere failure to follow the disclosure requirements. *See Ausloos,* 626 F.Supp. at 327.

Given the absence of any arbitrary or capricious action on the part of defendant 3M, the Court cannot find that the plaintiffs have stated a cause of action under ERISA. Furthermore, the mere failure to report and disclose is not actionable. Therefore, summary judgment will be GRANTED to defendant 3M on this claim.

## IV. *Antitrust Claim*

Plaintiffs in their second amended complaint claim that the defendants violated the Sherman Antitrust Act, 15 U.S.C. § 1 (the "Act"), by virtue of the agreement between 3M and GE whereby 3M agreed not to rehire the plaintiffs for two years if they accepted employment with GE. Plaintiffs allege the agreement is "a naked restraint of trade with no purpose but to reduce competition" and that it amounts to a *per se* violation of the Act. Plaintiffs further allege, and in the alternative, that the agreement has no basis in reason and is therefore violative of the antitrust laws. The Court finds this cause of action to be without merit.

The provision in the sale agreement at issue states:

> EMPLOYEES. Each of the parties hereto recognize that the continued success of TCB depends on the experience and dedication of its employees who represent an important, unquantifiable asset. Accordingly, for a period of two years after the Closing Date, neither 3M nor any subsidiary thereof shall hire or employ any person currently employed by 3M in the TCB who elects to accept employment with GE.

From this language, plaintiffs urge this Court to find either a *per se* violation of the antitrust laws or a violation based on the

rule of reason. Defendants respond that plaintiffs have no standing under the antitrust laws, that no *per se* violation has occurred, and that the rule of reason supports a finding upholding this provision.

■■■ The first determination is whether plaintiffs have suffered an injury in fact which would permit them standing. An injury in fact occurs when a party has been denied a "realistic employment opportunity." *Cesnik v. Chrysler Corporation,* 490 F.Supp. 859, 864 (M.D.Tenn.1980).[10] Injury in fact is the first part of a two-prong test for determining standing under the antitrust laws. The second prong requires a party to demonstrate that its interest is within the zone of interest sought to be protected by the Act. *Malamud v. Sinclair Oil Corporation,* 521 F.2d 1142, 1151 (6th Cir.1975). The deprivation of an employment opportunity will satisfy the requirement of injury in fact to business or property interest. *Cesnik,* 490 F.Supp. at 864.

In *Cesnik,* Chrysler Corporation sold its Air-Temp Division to Fedders Corporation. Chrysler and Fedders agreed that Chrysler would not rehire any of its former managerial personnel of its Air-Temp Division even if these individuals refused employment with Fedders. Fedders made an employment offer to the plaintiffs—one of the named plaintiffs refused the offer while the other first accepted and then withdrew his acceptance. The offer of employment was made on March 9, 1976, and the plaintiffs were terminated by Chrysler on April 9, 1976. The Court found, on the facts alleged, that the injury in fact prong of the *Malamud* test was satisfied.

■■■ The case presented here is entirely different. By the express terms of the language, the employees at the Laurens and Chattanooga plants were not required to accept employment with GE. Only if they chose to accept employment did 3M agree not to rehire these employees for a

---

**10.** 15 U.S.C. § 1 reads in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...."

period of two years. The Court finds that the facts do not support the plaintiffs' allegations that they suffered an injury in fact permitting them to prosecute this action. Nonetheless, and in order to make a complete disposition of this matter, the Court will undertake an analysis of whether the plaintiffs, if they had standing, have pled sufficient facts to withstand summary judgment on the substantive issues.

Plaintiffs first seek an invocation of the *per se* doctrine of the Act. The *per se* doctrine recognizes that there are some agreements in the restraint of trade "which from their 'nature or character' " are unduly restrictive and thus forbidden by both the common law and by statute. *Klor's v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 211, 79 S.Ct. 705, 709, 3 L.Ed.2d 741 (1959). Traditionally, group boycotts, otherwise known as concerted refusals to deal, have fallen within the *per se* category. *Id.* at 212, 79 S.Ct. at 709. But, courts examining the issue of group boycotts have read the *Klor's* decision to only apply to group boycotts which act as "naked restraints of trade." *Cesnik*, 490 F.Supp. at 866; *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499, 539 (E.D.Mich.1974), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). A *per se* violation requires "pernicious conduct" which not only is an unreasonable restraint on competition but is not defensable in any manner. *See Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1177–78 (D.C.Cir.1979). Thus, courts have refused to apply the "group boycott" designation where the effect is not to drive out competition but to achieve some other goal, whether or not the goal withstands the rule of reason analysis. *Id.* at 1179–80.

 In the present case, the Court finds as a matter of law that there was no stifling of competition for the services of these employees. The Court initially notes that the employees were free to choose whether they desired employment with GE. No coercive aspect existed in the 3M–GE agreement. Moreover, the facts in this case are even more favorable to the employees than those is *Cesnik* where the

employees were terminated by the defendant and the defendant refused to rehire them if they turned down employment with a successor employer. Any competition between the defendants here is "entirely conjectural," *Cesnik*, 490 F.Supp. at 866, and the Court cannot find there was anything more than incidental, if that much, impact on the employment market. As in *Cesnik*, the agreement, if it did this much, only precluded the plaintiffs from selling their services to one corporation, and there is no allegation, nor any basis for one, that this prevention had anything more than a de minimis impact on the employment market in general. *See id.* at 867.

The Court notes that the agreement by its own terms seeks to retain for the benefit of GE the experienced employees who worked for 3M. Plaintiffs on the bare allegations in their complaint attempt to adduce a purpose of reducing competition for employment services. However, absent any allegation that these plaintiffs had any type of natural monopoly on the employment sector, the *per se* rule is wholly inapplicable. The Court also notes that no competition would have existed for employees in the specialized business of technical ceramics since 3M ceased doing business in this field. These plaintiffs, if they sought continued employment in the field of technical ceramics, had the choice of working for GE or not working because no other alternative existed.

The *per se* rule being inapplicable, the Court must determine whether this agreement survives the rule of reason test. While the *per se* rule applies to situations where actions are "manifestly anti-competitive [cite omitted]," *Smith*, 593 F.2d at 1181, the rule of reason requires a demonstration that a restraint was "reasonably calculated to prejudice the public interest." *Cesnik*, 490 F.Supp. at 867. The Court can ascertain no public interest at stake here since there is no more than a de minimis impact on the employment market and the anti-competitive impact, if any, is incidental to the effective transition of ownership from 3M to GE. The actions of the defend-

ants must amount to an unreasonable restraint of trade under this analysis. *Lamb Enterprises, Inc. v. Toledo Blade Company,* 461 F.2d 506, 517 (6th Cir.), *cert. denied,* 409 U.S. 1001, 93 S.Ct. 325, 34 L.Ed.2d 262 (1972). Given the absence of any domination of the employment market, the Court can find no prejudice to the public interest.

Even if there was some prejudice to the public interest, the restraint in this case is wholly reasonable. The Court first notes the factors for determining reasonableness cited in *Cesnik,* including: the lack of any suggestion that the actual purchase violated the antitrust laws, the lack of a formal employment contract between the employer and workers, and the conclusion that the terms offered by the successor employer are substantially similar. *Cesnik,* 490 F.Supp. at 868. This Court agrees with the conclusion reached by the Ninth Circuit Court of Appeals in *Neeld v. National Hockey League,* 594 F.2d 1297 (1979), in upholding a summary judgment for the defendant as to a restriction on the eligibility of one-eyed hockey players to compete in the league, where that court stated: "Because nearly all contracts, combinations or other concerted actions restrain someone to some greater or lesser degree, section 1 has been read to prohibit only unreasonable restraints." *Id.* at 1298. The rule of reason, as a matter of law, supports the provision in this agreement which permitted GE to hire the experienced employees of 3M.

This Court finds that no violation of section 1 of the Sherman Antitrust Act has occurred. Summary judgment will be GRANTED to the defendants on this issue.

### V. *Seventh Amendment Constitutional Claim*

Plaintiffs have filed a contingent constitutional challenge, dependent on this Court's disposition of plaintiffs' request for a jury trial and the subsequent motions by defendants to strike that request. Given the above disposition, the Court need not reach this issue.

### VI. *Conclusion*

The defendants are entitled to summary judgment on plaintiffs' first, second, sixth and seventh causes of action. Summary judgment has already been granted to the defendants on the third, fourth, and fifth causes of action. The Court need not reach plaintiffs' eighth cause of action given these dispositions. An appropriate order will enter.