852 F.2d 569
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert ROWE, et al., Plaintiffs-Appellants,
v.
ALLIED CHEMICAL HOURLY EMPLOYEES' PENSION PLAN, et al.,
Defendants-Appellees.
 No. 87-5480.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1988.
 
 Before LIVELY, KRUPANSKY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs, the Oil, Chemical and Atomic Workers International Union ("OCAW"), its Local 3-523 and some eighty OCAW members, appeal the district court's decisions granting summary judgment in favor of the defendants, Allied Corporation (Allied), the Allied Chemical Hourly Employees' Pension Plan (Allied Plan), Armco, Inc. (Armco), and the Armco, Inc. Pension Plan (Armco Plan). This case involves the OCAW members' entitlement to various pension benefits, following the sale of Allied's Ashland coke plant to Armco and the transfer of pension assets from the Allied Plan to the Armco Plan in accordance with the sales agreement. After carefully reviewing the plaintiffs' contentions, we affirm the entry of summary judgment in favor of the defendants.
 
 
 2
 * The facts are largely undisputed. The Allied Plan is a collectively bargained pension plan covering Allied workers who are represented by the OCAW. Three provisions are involved in this case. The Allied Plan contains an "80-point" provision in Article IV(2)(a), which permits early retirement when the sum of an employee's age and length of service with Allied is 80 or more. The Plan also contains a provision describing the computation of credited service with Allied for the purpose of determining 80-point pension eligibility for employees who are laid off:
 
 
 3
 If an employee is laid off for any reason within three years of the date that he would be eligible to retire under Article IV(2)(a) hereof, he will receive credit for the period of layoff from the effective date up to the date his age and years of credited service, including such period of layoff, equals 80.
 
 
 4
 Article IX(4)(a). Finally, the Allied Plan includes a Social Security "leveling provision," which is available to employees who retire before becoming eligible for Social Security. This provision provides for an optional method of leveling a pensioner's income throughout the retirement years by taking into account the pensioner's Social Security income. Article VII states:
 
 
 5
 An employee retiring under the provisions of Article IV(2a) or (2c) hereof before he first becomes eligible to receive Social Security payments may elect to receive an actuarially equivalent retirement income providing larger monthly payments, in lieu of the retirement income otherwise payable upon early retirement, until the date he first becomes eligible to receive Social Security payments; thereafter, his monthly payments shall be reduced by the approximate amount of his monthly Social Security benefit. Insofar as practical, therefore, a level total retirement income will be available for the pensioner.
 
 
 6
 Under the terms of the sales agreement between Allied and Armco, Armco agreed to provide 80-point pensions under the Armco Plan to those Allied employees who were employed by Armco and who were eligible to receive the 80-point pension under the terms of the Allied Plan as of the closing date of sale (December 31, 1981). This special provision was made to accomodate these pensioners in the Armco Plan because that plan did not contain an 80-point benefit provision.
 
 
 7
 Allied also agreed to transfer to the Armco Plan assets equivalent to the actuarial value of the benefits earned by Allied employees as of the date of sale. For each employee for whom funds were transferred, Armco agreed to credit service under the Allied Plan for eligibility or vesting. Employees could then elect benefits under the Armco Plan based on their entire length of Allied-Armco service, or they could elect the pension accrued with Allied as of the sale date, plus any benefits accrued with Armco subsequent to the sale. However, the Allied employees who were not hired by Armco or who chose to retire at the time of the sale continued to be covered solely under the Allied Plan.
 
 
 8
 Preceding the sale of the coke plant, Allied and OCAW representatives met on a number of occasions to discuss the impact of the sale. Allied advised employees who were eligible for an 80-point pension of their options under the sales agreement. In particular, they were told that the Armco plan did not contain a Social Security leveling provision equivalent to the one in the Allied Plan. If they wished to elect this option, they had to do so before they began working for Armco.
 
 
 9
 There are three groups of plaintiffs in this case:
 
 
 10
 Group 1 As of the sale date, the Group 1 plaintiffs were actively employed by Allied. All were offered and accepted immediate employment with Armco. On the sale date, however, no Group 1 plaintiff was eligible to retire under the 80-point provision of the Allied Plan; all but one were within three years of reaching 80 points.
 
 
 11
 Under the sales agreement, Armco credited the Group 1 plaintiffs' Allied service under the Armco plan, and Allied transferred assets to the Armco Plan to cover that service. However, the Group 1 plaintiffs, since they had not attained 80 points when they accepted Armco employment, were not covered by Armco's agreement to provide the 80-point pension.
 
 
 12
 The Group 1 plaintiffs attained 80 points while working for Armco and thus applied for an Allied 80-point pension under Article IX(4)(a) of the Allied Plan. They claimed that the sale effected a layoff which entitled them to continuing service credit under Article IX(4)(a). The Allied Plan denied the pension requests because these plaintiffs were no longer participants in the Allied Plan and were never laid off from Allied.
 
 
 13
 Group 2 These plaintiffs also accepted employment with Armco immediately following the sale, with no break in service. Unlike Group 1, however, these plaintiffs had reached 80 points at the time of the sale and thus were entitled to 80-point pensions under the sales agreement. Group 2 plaintiffs claim they should receive an 80-point pension under the Allied Plan while continuing to work for Armco. The plaintiffs applied to the Allied Plan, which denied the pension requests because they had not elected to retire while they were Allied employees and participants in the Allied Plan. Since provision had been made to pay the benefits under the Armco Plan, Group 2 plaintiffs need only retire under that Plan to receive the 80-point pension. The record indicates that several employees have already done so since this litigation commenced.
 
 
 14
 Group 3 These plaintiffs also had achieved 80 points when the sale took place. Unlike Group 2, however, these plaintiffs elected to retire from Allied and are receiving 80-point pensions, including the Social Security leveling option afforded under the Allied Plan. Group 3 plaintiffs contend they were wrongfully induced to retire by representations that the Social Security option would be unavailable if they accepted Armco employment and became participants in the Armco Plan. The undisputed facts show that the Armco Plan did not contain a Social Security leveling provision, and that all communications made by Armco representatives to Allied representatives before the sale were that no Social Security option would be provided. Armco did not formulate and communicate a policy decision to provide the option until plaintiffs' counsel demanded the option on behalf of a former Allied employee, nearly a year after the sale.
 
 
 15
 Plaintiffs filed this suit, alleging a multitude of contentions. In Counts I and III, Group 1 and 2 plaintiffs alleged that the Allied defendants, by denying 80-point pensions under the Allied Plan, violated the Allied Plan and breached their fiduciary duties under section 404 of Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Sec. 1104. In Counts II and IV, these plaintiffs also alleged that the Allied defendants failed to transfer to the Armco Plan sufficient assets to pay their 80-point pensions, in violation of section 208 of that statute, 29 U.S.C. Sec. 1058.
 
 
 16
 In Counts V and VA, the Group 3 plaintiffs alleged that the Allied and Armco defendants wrongfully induced them to retire by misrepresentations that a Social Security leveling option would not be available under the Armco Plan. These counts are based on section 404 of ERISA and common law duties. Finally, in Count VI, the plaintiffs alleged that the Allied defendants breached their agreement with OCAW to abide by the terms of the Allied Plan, thus violating section 301(a) of the Labor-Management Relations Act, 29 U.S.C. 185(a).
 
 
 17
 The district court rejected all the plaintiffs' contentions. With respect to the first four counts, the district court concluded: 1) the Allied defendants' conduct in denying Group 1 and 2 plaintiffs 80-point pensions under the Allied Plan was neither arbitrary nor capricious; 2) the Allied defendants did not unilaterally amend the Allied Plan; 3) the transfer of assets from the Allied Plan to the Armco Plan did not violate section 208; that provision protects only accrued benefits, yet the early retirement benefits at issue were not accrued benefits; 4) the Allied defendants did not breach their fiduciary duties under section 404; and 5) any state law claims were preempted by ERISA.
 
 
 18
 With respect to the remaining counts, the district court concluded: 1) the Allied defendants owed no fiduciary duty to the Group 3 plaintiffs because the Social Security option was not an accrued benefit; 2) the Allied defendants acted reasonably in relying on the Armco defendants' repeated assurances that Armco would not offer the option; 3) the Group 3 plaintiffs were not employed by Armco and could not be viewed as participants in the Armco Plan; the court thus lacked subject matter jurisdiction over their claims against the Armco defendants; and 4) the plaintiffs' section 301 breach of contract claim was barred by their failure to exhaust the contractual grievance procedures and by the six-month statute of limitations.
 
 II
 
 19
 Plaintiffs argue that the district court erred in concluding that Allied's denial of the 80-point pensions to Group 1 and 2 plaintiffs was based on a justifiable interpretation of the Allied Plan. The appropriate standard of review for decisions of plan administrators under ERISA "is whether the decision was arbitrary, capricious, or in bad faith." Adcock v. Firestone Tire and Rubber Co., 822 F.2d 623, 626 (6th Cir.1987); Varhola v. Doe, 820 F.2d 809, 812-13 (6th Cir.1987). If the plan administrator's interpretation of a plan ambiguity is rational, courts should defer to the interpretation "in the interest of efficient pension administration." Cook v. Pension Plan for Salaried Employees, 801 F.2d 865, 871 (6th Cir.1986).
 
 
 20
 The Group 1 plaintiffs contend that the sale of the coke plant resulted in a layoff, which entitled them to continuing service credit under Article IX(4)(a) of the Allied Plan. We rule, however, that it was not arbitrary or capricious to conclude that these plaintiffs, having suffered no break in employment, were not laid off within the meaning of Article IX(4)(a). Thus, the Group 1 plaintiffs were not eligible for the Allied 80-point benefit because they ceased to be Allied employees before they satisfied the preconditions for eligibility.
 
 
 21
 Article IX(4)(a) does not state that any separation from Allied employment triggers the layoff provision; it states only that a layoff triggers the provision. Yet, all the Group 1 employees went directly from Allied to Armco without a break in service, and each received credit under the Armco Plan for his years of service with Allied. Conversely, Allied employees who were on layoff status at the time of the plant sale and were not recalled to work by Armco did accrue service credit under Article IX(4)(a). The plan administrator's interpretation of "layoff" as requiring a period of unemployment is supported by case law. See, e.g., Jung v. FMC Corp., 755 F.2d 708, 712-13 (9th Cir.1985); Pabst Brewing Co. v. Anger, 610 F.Supp. 214 (D.Minn.1985), aff'd, 784 F.2d 338 (8th Cir.1986).
 
 
 22
 We also agree with the district court that it was not arbitrary or capricious to deny the Group 2 plaintiffs an 80-point pension because they did not retire under the Allied Plan while they were Allied employees and participants in that plan. Under Article IV(2)(a) and Article V[1], retirement from Allied is a prerequisite to receiving the 80-point pension under the Allied Plan. It is undisputed that each Group 2 plaintiff was counseled by Allied representatives before the plant sale that he could retire from Allied and receive the 80-point pension, or go to work for Armco and receive the 80-point pension upon retirement from Armco. When these plaintiffs did not retire from Allied, the assets to fund their 80-point benefits were transferred from Allied to Armco.
 
 
 23
 If the Group 2 plaintiffs wanted the 80-point pension, yet still wanted to work for Armco, they could have retired from Allied and then sought employment with Armco. Instead, they chose guaranteed employment with Armco, at which point Allied transferred assets to the Armco Plan for their pension. Thus, when these plaintiffs later sought benefits from Allied, the Allied defendants properly determined that plaintiffs had failed to retire while they were participants in the Allied Plan.
 
 III
 
 24
 Next, plaintiffs contend that the Allied defendants unilaterally amended the Allied Plan to eliminate the Group 1 and Group 2 plaintiffs' 80-point pensions, in violation of their fiduciary duties under section 404 of ERISA. The Allied defendants amended the Plan, plaintiffs assert, by "imposing new conditions and/or a different interpretation on the Allied Plan's provisions."
 
 
 25
 This argument, however, is nothing more than a recasting of plaintiffs' previous contention that the plan administrator's interpretation of the Allied Plan was arbitrary and capricious. As the Allied defendants correctly point out, the "alleged 'amendments' are really disputes over Plaintiffs' satisfaction of the pre-conditions for benefits described in the [Allied] Plan's terms." We have already concluded that the district court was correct in concluding that the plan administrator's interpretation of the Allied Plan was not arbitrary or capricious. The lower court also ruled, correctly in our view, that the Allied defendants did not unilaterally amend the Allied Plan, as the plaintiffs contend. The defendants' interpretation of the Allied Plan, rather than amending the Plan in any respect, merely gave substance and effect to existing provisions. We find the plaintiffs' section 404 claim to be without merit.
 
 IV
 
 26
 Plaintiffs' next contention is based on section 208 of ERISA:
 
 
 27
 A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan ... unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).
 
 
 28
 29 U.S.C. Sec. 1058. They argue that the Allied defendants violated this provision by failing to transfer to the Armco Plan sufficient assets to pay the 80-point pensions to the Group 1 and Group 2 plaintiffs. We disagree.
 
 
 29
 Under section 208, we must compare the benefits an employee would receive before the transfer of assets (had the plan terminated) with the benefits he or she would receive after a transfer (had the new plan terminated). The Group 1 plaintiffs were not entitled to receive an 80-point pension immediately before the transfer because, as we discussed earlier, they had not satisfied the eligibility requirements of the Plan. Specifically, the sum of their age and service did not equal or exceed 80 on the sale date. Section 208 does not require the preservation of a benefit for which the plaintiffs were ineligible when the transfer occurred. Thus, the Allied defendants did not violate section 208 by failing to transfer sufficient assets to the Armco Plan to fund 80-point benefits for these plaintiffs.[2]
 
 
 30
 Plaintiffs' claim on behalf of Group 2 plaintiffs is equally without merit. At the time of the transfer, these plaintiffs were entitled to receive under the Armco Plan the same benefits as they would have received if they had remained in the Allied Plan and that Plan had then terminated. See Dougherty v. Chrysler Motors Corp., 840 F.2d 2, 4 (6th Cir.1988). The Group 2 plaintiffs were entitled to an 80-point pension under the Allied Plan before the transfer, and they are now entitled to an 80-point pension under the Armco plan. The record is undisputed that Allied transferred assets to the Armco Plan to fund the 80-point pensions. Moreover, it was stipulated that several Group 2 plaintiffs who retired from Armco after this litigation commenced were receiving an 80-point benefit.
 
 V
 
 31
 The Group 3 plaintiffs argue that the Allied defendants breached their fiduciary duties under section 404 of ERISA, by failing to advise them accurately regarding the availability of the Social Security leveling option under the Armco plan. They contend the Allied defendants wrongfully induced them to retire from Allied and forego Armco employment by misrepresenting to them that the option would not be available at Armco. We disagree.
 
 
 32
 We note at the outset that the plaintiffs do not claim that the Allied defendants have terminated their contractual right to the option, inasmuch as they are currently receiving it. The Social Security option remains in the Allied Plan, has not been modified, and each Group 3 plaintiff who elected the option has had the benefit of the provision. Moreover, Allied was not under a fiduciary duty to maintain the option either directly or through Armco because the option was a contingent, early retirement, benefit which Allied was not required to maintain. Sutton v. Weirton Steel Division, 724 F.2d 406, 410 (4th Cir.1983), cert. denied, 467 U.S. 1205 (1984). The legislative history of ERISA expressly mentions Social Security options as forfeitable and subject to amendment without implicating ERISA's fiduciary standards. H.R.Rep. 807, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 4670, 4726. See also H.R.Conf.Rep. 1280, 93d Cong., 2d Sess. reprinted in 1974 U.S.Code Cong. & Admin.News 5038, 5054. It follows then that the Allied defendants did not have a fiduciary duty to provide information to these plaintiffs concerning the availability of the option in another employer's plan.
 
 
 33
 In any event, plaintiffs' contention that the Allied defendants breached their fiduciary duty by not advising them accurately of their pension rights with Armco is without merit. There is no indication that Allied supplied false information, and it was reasonable for these defendants to rely on the repeated assurances of Armco that the Social Security option would not be provided under the Armco Plan. As Allied notes, "Armco's decision a year later [after the sale] to provide the option does not retroactively convert Allied's statements, which were true when made, into falsehoods." We also reject plaintiffs' common law based claims, on the basis of the opinions below. The magistrate concluded, and the district court agreed, that Allied acted reasonably in relying on the repeated assurances of Armco that Armco would not offer the option. We agree with this conclusion and, therefore, do not address the possible preemption questions raised. See Pilot Life Insurance Co. v. Dedeaux, --- U.S. ----, 107 S.Ct. 1549 (1987).
 
 
 34
 The Group 3 plaintiffs raise similar arguments against the Armco defendants; that is, that these defendants' failure to inform either Allied or the plaintiffs of their intention to furnish the Social Security option constituted misrepresentation in breach of ERISA fiduciary and common law duties.
 
 
 35
 The district court properly rejected this argument on jurisdictional grounds. ERISA establishes limits on who may sue for breach of fiduciary duties. "Although ERISA does mandate fiduciary duties with respect to employee benefits plans, such duties are solely with respect to participants." Stanton v. Gulf Oil Corp., 792 F.2d 432, 435 (4th Cir.1986). The plaintiffs readily concede as much, when they say that "[t]he lower court was correct in its determination that it lacks subject matter jurisdiction over the Group 3 Plaintiffs' ERISA claims against Armco, if they are not or were not participants in the Armco Plan."
 
 
 36
 The Group 3 plaintiffs are not "participants" within the meaning of ERISA, 29 U.S.C. Sec. 1002(7), because they were never employed by Armco, nor did they have any participation in the Armco Plan. See Stanton, 792 F.2d at 434-45; Kuntz v. Reese, 785 F.2d 1410, 1411 (9th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 318 (1986). No contributions were ever made by Armco on their behalf. Freeman v. Jacques Orthopaedic & Joint Implant Surgery Medical Group, 721 F.2d 654, 655 (9th Cir.1983). The plaintiffs have received all the benefits they were entitled to under the Allied Plan, and they are now seeking only damages. "Because, if successful, the plaintiffs' claim would result in a damage award, not in an increase of vested benefits, they are not plan participants." Kuntz, 785 F.2d at 1411. Plaintiffs alleged merely the "breach of fiduciary duty or of a duty to disclose information about benefits, [and] thus any recoverable damages would not be benefits from the plan." Ibid.
 
 
 37
 Plaintiffs argue they qualify as "participants" because they are former members of an employee organization, OCAW, and they were eligible to receive benefits under the Armco Plan. To be sure, the definition of "participant" encompasses a "former member of an employee organization, who is eligible or may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. Sec. 1002(7). Although plaintiffs say they were eligible to receive the Social Security option under the Armco Plan, the sales agreement accorded rights under that Plan only to former Allied employees whom Armco hired. Moreover, the "may become eligible" language "applies only to current employees." Freeman, 721 F.2d at 655. See also Stanton, 792 F.2d at 432. The Group 3 plaintiffs were never employees of Armco, and therefore they are not "participants" within the meaning of ERISA. Accordingly, they may not sue Armco for breach of fiduciary duty. Freeman, 721 F.2d at 655. See Coleman v. General Electric Co., 643 F.Supp. 1229, 1234-36 (E.D.Tenn.1986), aff'd, 822 F.2d 59 (6th Cir.1987).[3] In any event, the Social Security option, as noted earlier, is not an accrued benefit under ERISA; it could be amended or even eliminated, and any decision in that respect would not be reviewable under ERISA's fiduciary standards. See supra at 13.
 
 
 38
 We have reviewed the remaining contentions and, finding them to be without merit, we AFFIRM the judgments of the district court.
 
 
 
 [1]
 Article V states that "[a]n employee meeting the eligibility requirements of Article IV will be entitled to receive a pension each month beginning with the month following that in which his retirement takes place...." (emphasis added)
 
 
 [2]
 Plaintiffs do not contend that the Allied defendants failed to transfer sufficient assets to the Armco Plan to cover whatever benefits they were entitled to before the sale date under the Allied Plan
 
 
 [3]
 Because neither the magistrate nor the district court reached the merits of the common law claims, we decline to address these issues